THE CHICAGO TERMINAL TRANSFER RAILROAD COMPANY
*v.*
JOHN KOTOSKI.

*Opinion filed October 25, 1902—Rehearing denied December 9, 1902.*

1. NEGLIGENCE—*trainmen knowing trespasser is on track must avoid willfully injuring him.* While it is not the duty of trainmen to anticipate the presence of trespassers on the tracks or to keep a lookout for them, yet when they know that persons are there they must avoid inflicting injury upon them through such gross negligence as evidences willfulness or wantonness.

2. SAME—*when question whether plaintiff was a trespasser is a question of fact.* Whether the plaintiff, who was run down while crossing a trestle in returning to the train from a picnic ground, was a trespasser is a question of fact for the jury under proper instructions, where it appears he was directed to go that way to the grounds by the conductor of the train, and was following others over the same route on his return to the train.

3. SAME—*what tends to show that injury was willful.* Evidence that the plaintiff was attempting to cross a trestle to reach an excursion train that was waiting on the other side for passengers; that others had crossed ahead of him and entered the train; that when he was part way over the trestle the train suddenly began to back toward him without warning; that he turned and ran back, and that one of the trainmen stood upon the rear end of the train and saw his peril but made no attempt to stop the train, merely calling to the plaintiff to run, tends to show that the injury was willfully inflicted.

4. TRIAL—*permitting plaintiff to exhibit wound not error.* It is not error to permit the plaintiff in a personal injury case to exhibit his wound to the jury.

5. EVIDENCE—*when evidence of conduct before and after an injury is proper.* Where the injury for which damages are sought consists of a serious fracture of the skull, evidence of plaintiff's conduct before and after the injury is admissible, as tending to show the extent, nature and probable permanency of his injuries.

*Chicago Terminal R. R. Co. v. Kotoski*, 101 Ill. App. 300, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This suit was brought by appellee, by his next friend, to recover damages for an injury to his person through the alleged negligence of appellant's employees. He recovered a judgment in the superior court of Cook county for $15,000 and costs of suit, to reverse which the defendant appealed to the Appellate Court for the First District, but that court affirmed the judgment below, and hence this further appeal.

On June 25, 1899, appellee, with others, went as a passenger upon an excursion train of appellant from the city of Chicago to Blue Island, for the purpose of visiting a picnic ground at the latter place. He purchased a ticket to the place of destination and return. Upon reaching Blue Island he, with others, left the train, and upon inquiry of the conductor as to the best way to reach the picnic grounds was told, "Go right straight down the track; you can't miss it,"—pointing down the railroad track, which crossed a narrow bridge or trestle two hundred feet long, twenty-five feet high at its highest point and a little wider than a train of cars. Appellee had never been to the place before. The conductor also said, "The train leaves at five o'clock sharp, right here." It was then standing at the station and the rear end about one hundred and fifty feet north of the north end of the trestle. Appellee and several other of the passengers walked down the track, crossed the trestle, and in about two hours attempted to return by the same route. Before the parties got to the trestle on their return a number of others passed north over the trestle. As appellee and those with him approached it they saw the train standing where they had left it,—that is, the rear end about one hundred and fifty feet north of the north end of the trestle. When they got near the middle of the trestle the train started backing, with the coaches in front, toward them, without ringing the bell, blowing the whistle or giving any other signal. The rate of speed of the train as it backed down was variously estimated by the wit-

nesses at from six to eight miles per hour. As it approached, appellee and others turned and ran back south in order to escape the danger of being run down. There was no room upon the sides of the trestle upon which a person could stand with safety and permit the train to pass, except at one point, where there was room for a single person, but that place was occupied before appellee could reach it. The train finally caught him and a young girl whom he was attempting to assist to escape, and threw them from the trestle to the ground below. In falling, plaintiff's head struck a timber on the ground, producing a severe fracture of the skull. There was no dispute upon the trial as to the fact that his injuries are of the most serious character, disabling him permanently, both mentally and physically. The evidence tended to show that a trainman stood upon the rear platform of the rear car of the train as it backed over the trestle, who called out to the people upon the bridge to run, but gave no signal and made no effort to stop the train.

Upon the trial appellant's section foreman testified that there are signs at both ends of the trestle, "This is a private bridge—foot passengers are prohibited from crossing it." Whether these signs were at the ends of the bridge at the time of the accident he does not say, nor is there any proof as to that fact except the statement of witnesses that they did not see them on that day. The same witness further testified: "They have a good many picnics out there in the summer time; have them every Sunday; had them in 1898-99. This railroad runs excursions to accommodate the people going to the park. People, when they got there, some went one way, some went another; some went down the street, some over the railroad viaduct. I have seen people crossing that bridge or viaduct." None of the trainmen testified on the trial. Why the train was backed over the trestle in no way appears, nor was it shown that the track south of the station over the trestle was in general use by the company.

JESSE B. BARTON, for appellant.

JOHN F. WATERS, and C. HELMER JOHNSON, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The three grounds of reversal here urged may be stated to be: the trial court erred in refusing to give an instruction asked by the defendant at the close of all the evidence to find for the defendant, in refusing instructions asked by it upon the final submission of the case to the jury, and in the admission of improper evidence over the objection of its counsel.

Under the first ground, it is insisted that the conductor had no right or authority to authorize the plaintiff to walk along the track or bridge; that plaintiff was a trespasser in so doing, and that the evidence failed to prove, or tend to prove, that the servants of appellee were guilty of willfulness or wantonness in inflicting injury upon him. Whether or not the conductor could, under the peculiar circumstances of this case, bind the company by his directions to passengers belonging to his train need not be decided. We are of the opinion that, admitting the plaintiff below was a trespasser while attempting to cross the bridge, the evidence fairly tends to show that his injury was the result of the willfulness of those in charge of the train, and that his recovery should be sustained upon that ground alone. As appears from the foregoing statement of facts, when he came to the south end of the trestle-work other passengers had crossed over the same place and entered the train. He was some distance upon the bridge when the train, being but a short distance from the north end, without any signal or warning began to move backward over it. The evidence clearly tends to show that one of the men in charge was upon the rear end of the train, in plain view of the perilous situation of the plaintiff and those with him, and that he actually saw the danger, calling to

them to run but making no effort whatever to stop the train or give an alarm.   It is said that even if the man in the blue uniform was one of the trainmen it does not appear that he could have prevented the injury by stopping the train.   The rule is, that the trial court should not take a case from the jury on the motion of the defendant unless the evidence, with all its reasonable inferences and intendments, fails to fairly tend to prove the plaintiff's case.   It is well known that trains of cars for the carriage of passengers are always equipped with appliances by which signals may be given and communicated to the engineer to stop and start them.   To say, as we must, that the object in placing a man upon the rear of the train was to look out for persons on the track and avoid accidents, and at the same time to assume, in the absence of all proof, that he was wholly without the means of stopping the train or making any effort to do so, would be unreasonable.   We have often had occasion to hold that it is not for us to determine upon this issue whether the weight of the testimony justified the finding or not, but only whether there was evidence fairly tending to support the verdict.   Such gross negligence as evidences willfulness will entitle a plaintiff to recover even though he be a trespasser.   (*Illinois Central Railroad Co.* v. *Godfrey,* 71 Ill. 500; *Blanchard* v. *Lake Shore and Michigan Southern Railway Co.* 126 id. 416.)   Such gross want of care and regard for the rights of others as will justify the presumption of willfulness or wantonness will make the defendant liable for injury to a plaintiff.   (*Lake Shore and Michigan Southern Railway Co.* v. *Bodemer,* 139 Ill. 596, and cases cited.)   In *Illinois Central Railroad Co.* v. *O'Connor,* 189 Ill. 559, and like cases, it was held there was no liability because there was an entire absence of evidence that the company's employees had knowledge of the fact that the plaintiff was on its track.   We do not.hold that it was the duty of the trainmen to anticipate the presence of trespassers on the tracks or to keep a lookout

for them, but we do hold that when they knew that persons were there they had no right to willfully run them down and inflict injury upon them.

The appellant asked the court to instruct the jury that "the plaintiff, while upon the trestle, bridge or viaduct of the defendant, was a trespasser thereon," which it refused, and it is insisted that such refusal was error. We do not think so. Whether he was a trespasser or not was a question of fact for the jury under proper instructions, and the court, at the instance of the defendant, told the jury "that a trespasser is one who goes upon the property of another without the consent of the owner thereof;" and further, that "if the jury believe, from the evidence, that the plaintiff went upon the trestle, bridge or viaduct of the defendant without the consent of the defendant, then the plaintiff was a trespasser thereon;" "that if the defendant was the owner of a trestle, bridge or viaduct, and if the plaintiff went upon such trestle, bridge or viaduct without the consent of the defendant, then the plaintiff was a trespasser thereon," and that, "as a matter of law, conductors and brakemen in charge of a train of a railroad company are not presumed to have authority to license or permit any person to go upon the private property of the railroad company outside of its station or station grounds, and if the jury believe, from the evidence, that any conductor or brakeman in the employ of the defendant told the plaintiff that he might use the right of way, bridge, viaduct or trestle of the defendant for his convenience in reaching a pleasure resort more than one mile distant from the railroad station, such statement of the conductor or brakeman gave no authority to the plaintiff to go thereon, unless it be shown that such conductor or brakeman had authority to give such permission." What more could it ask on the question of the plaintiff being a trespasser, and what more could the court have fairly told the jury on that subject?

Another instruction asked by the defendant and refused was to the effect that if the plaintiff was, at the time of receiving his injury, a trespasser upon the track of the defendant, he could not recover unless the injury was inflicted by the defendant through gross negligence or willfulness. It need only be said that all there is in that instruction applicable to the case was given in others at the instance of counsel for the defendant.

It is finally insisted that the court improperly admitted evidence as to the effect of the injury upon plaintiff, —*i. e.*, the difference in his conduct before and since the accident. This testimony tended to prove the extent, nature and probable permanency of his injuries. It was not denied upon the trial, nor does it seem to have been urged in the Appellate Court, that the injuries were of the serious character insisted upon. We have carefully considered the objection urged and the suggestions of counsel as to the incompetency of the testimony and are unable to see wherein it was improper.

Plaintiff was permitted to exhibit the wound upon his head to the jury, and this counsel says was error, although he admits that this court has held otherwise. We are favored with no argument or citation of authorities to the contrary, and see no sufficient reason for not adhering to our former decisions in that regard.

We are not unmindful of the importance of this case, both to the plaintiff and the defendant; but after a thorough and painstaking consideration of the entire record we are unable to find any such errors of law as would justify this court in reversing the judgment of the Appellate Court, and it will accordingly be affirmed.

*Judgment affirmed.*