**2022 IL 127603**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127603)

ALEJANDRO QUIROZ, Administrator of the Estate of Ricardo Quiroz, Deceased, Appellee, v. THE CHICAGO TRANSIT AUTHORITY, Appellant.

*Opinion filed September 22, 2022.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

Justices Neville and Holder White took no part in the decision.

## OPINION

¶ 1    The issue presented in this case is whether the Chicago Transit Authority (CTA) owed a duty of care to plaintiff's decedent, Ricardo Quiroz, who was struck by a rapid transit train after he trespassed into a CTA subway tunnel and fell next to the tracks. The Cook County circuit court held that the CTA owed no legal duty to

protect the decedent from the open and obvious danger of a moving train. The appellate court reversed, finding the allegations in the complaint sufficient to establish a legally recognized duty under section 337 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 337 (1965)) where plaintiff alleged that the decedent was a discovered trespasser in a position of peril. For the following reasons, we hold that section 337 does not apply to an open and obvious danger and that no further duty was owed under the circumstances as alleged.

¶ 2                                    BACKGROUND

¶ 3        This case arises from an incident that occurred in the early morning hours of April 15, 2018, inside the underground subway tunnel connecting the Grand and Chicago rail stations on the CTA's Red Line. As alleged in plaintiff's second amended complaint, the decedent was inside the tunnel. At some point, he fell from a recessed catwalk authorized for CTA personnel onto the ground near the tracks and injured himself. Plaintiff alleged that the area where the decedent fell was lit and the trains were equipped with headlights. At least two trains passed him without incident. Plaintiff additionally alleged that the decedent was "in the direct line of vision" and was "clearly visible" to the two CTA personnel operating these trains in the subway tunnel and that the two train operators who passed the decedent saw him as he lay next to the tracks. There were security cameras in the area where he fell, and he was alleged to be visible in the cameras. Subsequently, another train struck the decedent in the tunnel, causing his fatal injuries.

¶ 4        Thereafter, Alejandro Quiroz, as administrator of the decedent's estate, filed a wrongful death action, asserting claims for negligence and willful and wanton conduct, as well as a claim for spoliation of evidence. Specifically, in counts I and II he asserted wrongful death and survival claims based on the theory that, having discovered the decedent in a position of peril, the CTA owed him a duty of care for his safety. The CTA violated that duty by failing to notify other CTA train operators of his presence and by failing to stop the train service so that the decedent could be rescued.

¶ 5        Counts III and IV asserted wrongful death and survival claims based on willful and wanton misconduct. These claims are based on the alternative theory that neither train operators nor security personnel saw the decedent, even though he was

plainly visible, and that their failure to keep a lookout for objects and persons who might be in the tunnel and to monitor the security cameras in the tunnel in real time to determine if people in those areas were endangered was willful and wanton. Count V asserted a spoliation claim based on the CTA's alleged failure to produce video from the trains that passed the decedent inside the tunnel.

¶ 6    In response to the second amended complaint, the CTA filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)). Therein, the CTA argued that, because the decedent was a trespasser, it owed no duty to protect him from the open and obvious danger of a moving train. Plaintiff responded that the CTA owed the decedent a duty of ordinary care because it was alleged that he was a discovered trespasser in a position of peril.

¶ 7    After full briefing and a hearing, the circuit court granted the motion to dismiss the second amended complaint with prejudice. The court found that as a matter of law the CTA owed no duty to the decedent to prevent injury from the open and obvious danger of a moving train. The court relied on this court's decision in *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, and Restatement section 337, dealing with artificial conditions that are highly dangerous to known trespassers. Due to the open and obvious nature of the risk, as identified in *Choate*, the court found that plaintiff could not satisfy the second prong of section 337, which requires that the landowner has reason to believe that the trespasser will not discover or realize the risk involved. Thereafter, the circuit court denied plaintiff's motion to reconsider. Plaintiff appealed.

¶ 8    The appellate court reversed and remanded for further proceedings, finding that a duty was sufficiently pled. 2021 IL App (1st) 200181-U. The appellate court found that Restatement section 337 "provides the duty owed to trespassers by landowners." *Id.* ¶ 20. Specifically, under subsection (a) of section 337, the court found that the CTA knew or had reason to know of the decedent's presence in the tunnel and, under subsection (b) of section 337, that the decedent either did not or could not recognize the danger and remove himself from harm. *Id.* ¶ 21. The court also noted that in *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 446 (1992), which adopted section 337, this court made clear that a landowner must use ordinary care to avoid injury to a trespasser discovered in a place of danger. 2021

- 3 -

IL App (1st) 200181-U, ¶ 21. Accordingly, the court held that, based on the allegations presented in the second amended complaint, the CTA had a duty, pursuant to section 337, to exercise reasonable care to prevent injury to the decedent since the plaintiff alleged that he was visible to the train operators and unable to remove himself from danger. *Id.* ¶ 23.

¶ 9        We allowed the CTA's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2020). We also allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of plaintiff's position and allowed the Northeast Illinois Regional Commuter Railroad Corporation (Metra) and the Association of American Railroads to file *amici curiae* briefs in support of the CTA's position. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 10                                    ANALYSIS

¶ 11        This appeal arises from an order granting the CTA's motion to dismiss under section 2-615 of the Code. 735 ILCS 5/2-615 (West 2018). A motion to dismiss under section 2-615 is reviewed *de novo* because it challenges the legal sufficiency of a complaint by alleging defects on the face of the complaint. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). "In reviewing the sufficiency of a complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts," and we "construe the allegations in the complaint in the light most favorable to the plaintiff." *Id.* A court should not dismiss a complaint pursuant to this section unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Id.*

¶ 12        Illinois is a fact-pleading jurisdiction. Although the plaintiff is not required to set forth evidence in the complaint, the plaintiff "must allege facts sufficient to bring a claim within a legally recognized cause of action" and "not simply conclusions." (Internal quotation marks omitted.) *Doe v. Coe*, 2019 IL 123521, ¶ 32. To recover damages based upon a negligence theory, a plaintiff must plead and prove that "the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injury." *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010). A plaintiff must allege and prove the same elements for a willful and wanton cause of action. *Id.* at 235-36.

¶ 13    We begin by determining, under the facts alleged, whether the CTA owed a legally recognized duty of care to the decedent. Whether a duty exists is a question of law for the court to decide. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23. "A legal duty refers to a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Choate*, 2012 IL 112948, ¶ 22. Four overarching factors have guided our duty analysis in any negligence case: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 14.

¶ 14    Traditionally, at common law, a landowner owes a duty of reasonable care under the circumstances to all those entering the premises except to trespassers. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 227-28 (1996). A trespasser has been defined as a person "who enters upon the premises of another with neither permission nor invitation and intrudes for some purpose of his own, or at his convenience, or merely as an idler." *Id.* at 228; Illinois Pattern Jury Instructions, Civil, No. 120.01 (3d ed. 1994) ("A trespasser is a person who goes upon the premises of another without express or implied right."). An entrant's status is determined at the time of injury. *Soucie v. Drago Amusements Co.*, 145 Ill. App. 3d 348, 351 (1986).

¶ 15    As alleged in this case, the decedent was a trespasser because he entered an unauthorized area of the CTA's subway tunnel without invitation, permission, or right. He then lay on the CTA's right-of-way near or on the track in violation of a CTA ordinance that prohibits "entering or remaining upon any track or right-of-way." Chicago Transit Authority Ordinance No. 16-110 (approved Sept. 14, 2016). These ordinances have the force of law. See 70 ILCS 3605/31 (West 2018); *City of Chicago v. Roman*, 184 Ill. 2d 504, 511 (1998).

¶ 16    With respect to trespassers, a landowner generally owes no duty of reasonable care other than "to refrain from willfully and wantonly injuring them." *Choate*, 2012 IL 112948, ¶ 25; *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 116 (1995). This limited duty is based on the concept that the law does not require an owner or occupier of land to anticipate

the presence of persons wrongfully or unexpectedly on his land. *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 325 (1978); see also *Rodriguez v. Norfolk & Western Ry. Co.*, 228 Ill. App. 3d 1024, 1039 (1992) ("an intruder who comes on the possessor's land without his permission has no right to demand that the possessor provide him with a safe place to trespass, or that the possessor protect the trespasser from his own wrongful use of the possessor's property"). Flowing from this proposition, a railroad operator is not required to keep a lookout for persons on the track, especially in the subway tunnel where pedestrians are clearly not expected or anticipated. See, *e.g.*, *Joy v. Chicago, Burlington & Quincy R.R. Co.*, 263 Ill. 465, 468 (1914) ("the law casts no duty upon a railroad company to keep a lookout for trespassers on its track" away from populated areas and public crossings).

¶ 17    Additionally, in considering the foreseeability of the injury and the likelihood of injury, we have generally held that "a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44 (2003). We have adopted the meaning of "obvious" as defined in section 343A of the Restatement, meaning that "both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment." Restatement (Second) of Torts § 343A cmt. b, at 219 (1965). In cases involving open and obvious conditions, the risk of injury is slight because people are expected to appreciate and avoid obvious risks. *Bruns*, 2014 IL 116998, ¶ 16.

¶ 18    In addition to obvious dangers such as fire, drowning, or falling from a height (*Mt. Zion State Bank & Trust*, 169 Ill. 2d at 118), this court in *Choate* explicitly recognized as a matter of law that "a moving train is an obvious danger" that even a child "should realize the risk of coming within the area made dangerous by it." (*Choate*, 2012 IL 112948, ¶ 35). This court further held that "[i]t has never been part of our law that a landowner may be liable to a trespasser who proceeds to wantonly expose himself to unmistakable danger in total disregard of a fully understood risk." *Id.* ¶ 39.

¶ 19    Illinois courts have identified some special circumstances in which a duty of ordinary care to a trespasser may arise. See *Rhodes*, 172 Ill. 2d at 229; *Lee*, 152 Ill.

2d at 446. In *Lee*, this court adopted an exception found in section 337 of the Restatement relating to a duty to warn trespassers in certain circumstances.

¶ 20    Section 337 of the Restatement, titled "Artificial Conditions Highly Dangerous to Known Trespassers," provides:

"A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if

(a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and

(b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved." Restatement (Second) of Torts § 337 (1965).

¶ 21    In *Lee*, this court held that, where the CTA had reason to know of the presence of pedestrians upon its tracks, the CTA owed a duty of ordinary care to properly warn the trespasser of the dangerous condition of an electrified third rail, which was located at street level near the public sidewalk and adjacent to a busy street. 152 Ill. 2d at 452-53.

¶ 22    We specifically found that section 337(b) (Restatement (Second) of Torts § 337(b) (1965)) was satisfied where the third rail "was of such a nature that the CTA had reason to believe that a trespasser would not discover it." *Lee*, 152 Ill. 2d at 452. We relied on the facts that "[t]here was nothing which indicated either the existence or the location of the third rail, or that the electric current was carried in a rail" and that "[t]here were no markings on the third rail itself." *Id.* In other words, the nature of the dangerous condition at issue in *Lee* was hidden and latent. Accordingly, the CTA owed a duty of ordinary care to warn the trespasser of the dangerous condition in that instance.

¶ 23    Section 337 is not applicable to this case. As explained, the dangerous condition here, a moving rapid transit train, was an open and obvious danger that a trespasser is reasonably expected to appreciate and avoid. *Choate*, 2012 IL 112948, ¶ 35. Under Illinois law, there is no duty to warn a trespasser of an open and obvious

danger. *Id.* ¶ 39. Therefore, section 337(b) cannot be satisfied because the CTA would have no reason to believe that a trespasser would not appreciate the danger posed by a moving rapid transit train. Moreover, plaintiff does not allege a failure to warn the decedent of the dangerous condition. Accordingly, the appellate court erred in finding a duty of ordinary care under section 337 as applied to this case. There was no allegation of a failure to warn, and the focus of section 337(b) is on the objective nature of the dangerous condition and not whether the trespasser subjectively appreciated the danger. *Bruns*, 2014 IL 116998, ¶ 16 (stating that whether a dangerous condition is "obvious" is judged by an objective, reasonable-person standard).

¶ 24       Nevertheless, plaintiff argues that, despite the open and obvious nature of a moving train, we have held that a duty of reasonable care may arise once the landowner discovers the trespasser in a position of imminent peril. We briefly mentioned in *Lee* and *Rhodes* that a duty of a landowner to use ordinary care may arise to avoid injuring a trespasser who has been discovered in a place of danger in a position of peril on the premises. *Lee*, 152 Ill. 2d at 446 (citing *Briney v. Illinois Central R.R. Co.*, 401 Ill. 181, 186 (1948) ("to a trespasser the owner owes only the duty not to wilfully and wantonly injure him and to use ordinary care to avoid injury to him after his presence on the premises in a place of danger has been discovered")); *Neice v. Chicago & Alton R.R. Co.*, 254 Ill. 595, 603 (1912) (same); *Illinois Central R.R. Co. v. Eicher*, 202 Ill. 556, 560 (1903) ("A railroad company owes no duty to a person walking along its tracks without its invitation, either expressed or implied, except to refrain from wantonly or willfully injuring him, and to use reasonable care to avoid injury to him after he is discovered to be in peril ***.").

¶ 25       In *Rhodes*, 172 Ill. 2d 213, we provided as an example of a "place of danger" a trespasser discovered by a railroad on the tracks in the path of the railroad's moving train. We indicated that under such a circumstance the railroad would owe him a duty of ordinary care to avoid injuring him. *Id.* at 230 (citing *Higgins v. Baltimore & Ohio R.R. Co.*, 16 Ill. App. 2d 227, 230 (1958)). We rejected the application of the "place of danger" exception to the facts in *Rhodes* where the decedent was found in a relatively safe location on the premises in the warming house of a commuter train system. *Id.* at 231.

¶ 26    In support of his assertion that this exception applies here, plaintiff also relies on section 336 of the Restatement (Restatement (Second) of Torts § 336 (1965)). That section provides:

> "A possessor of land who knows or has reason to know of the presence of another who is trespassing on the land is subject to liability for physical harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with reasonable care for the trespasser's safety." *Id.*

¶ 27    Notably, we have never adopted that section of the Restatement. Section 336 does not address places of danger that are open and obvious and has only been adopted in 12 jurisdictions. See Restatement (Second) of Torts § 336, Reporter's Notes (May 2022 Update). Moreover, on closer inspection, this section of the Restatement and the cases plaintiff cites articulating this exception to the general rule regarding trespassers involve circumstances that are distinct from the present case.

¶ 28    In those cases, a train operator allegedly becomes aware of and observes a trespasser on the train tracks in a position of peril, with sufficient time to warn the trespasser and stop the train to avoid striking the trespasser, but fails to do so. The issue in these cases then becomes whether the train operator breached his duty under the circumstances of the case. See, *e.g.*, *Joy*, 263 Ill. at 467-68; *Illinois Central R.R. Co. v. Noble*, 142 Ill. 578, 587-88 (1892); *Chicago Terminal R.R. Co. v. Kotoski*, 199 Ill. 383, 387-88 (1902); Restatement (Second) of Torts § 336 cmt. d(1) (1965); *id.* § 336 illus. 3 (if "the engineer, after blowing the whistle, sees that A does not hear the warning or is unable or obviously intends not to obey it, the Railroad Company is subject to liability for running down A if the engineer fails to take reasonable care, after reaching a point 100 yards from A, to stop the train so as to avoid running A down"); *id.* § 336 illus. 4 ("The Railroad Company is subject to liability if the engineer had seen A, obviously unable to get out of the way of the train, and the accident was due to his failure to exercise reasonable care thereafter to stop the train before it ran over A.").

¶ 29    For example, in *Kotoski*, as the plaintiff was crossing the defendant railroad's trestle, a train was upon him before he had a chance to escape. One of the train crew was on the rear platform of the train and was aware of plaintiff's presence, since he shouted warnings to him, yet he made no attempt to call out to the engineer to stop

the train, which he could have done in time to avoid the injury. *Kotoski*, 199 Ill. at 386-87.

¶ 30    In essence, we found this conduct identified in *Kotoski* indistinguishable from the rule that a landowner owes a trespasser a duty to avoid willfully or wantonly causing injury to the trespasser once aware of his peril. *Id.* at 387. There, we held that the "injury was the result of the willfulness of those in charge of the train" (*id.* at 386), and when "[the train operator] knew that persons were there they had no right to willfully run them down and inflict injury upon them." *Id.* at 387.[1]

¶ 31    In contrast, in this case, plaintiff does not allege that the operator of the train that struck the decedent discovered him before colliding with him but failed to act in time to avoid striking him. Nor is there an allegation that this operator acted willfully or wantonly after discovering him on the track. Nothing in the second amended complaint suggests that the operator of the train that hit decedent ever observed him on the track prior to the collision. As explained, the train operator that struck the decedent had no legal duty to keep a lookout for a trespasser in the CTA tunnel. Accordingly, the circumstances as alleged here do not fall within the legally recognized common-law duty articulated in those cases.

¶ 32    Rather, plaintiff essentially asks us to adopt a new exception to the general duty owed to trespassers, which encompasses a broader duty to rescue: that the initial train operators who did not strike the decedent but allegedly saw him lying next to the track, and the alleged personnel monitoring security cameras in the tunnel, had an affirmative duty to stop the train service and rescue the decedent once his presence in the tunnel was allegedly known. Specifically, plaintiff alleges that, once aware of his presence, the CTA owed him a duty to rescue him from his perilous situation.

¶ 33    In *Rhodes*, we considered whether the landowner owed the trespasser an affirmative duty to rescue him from his premises where the landowner found the trespasser injured on his premises but not in a "place of danger." In that case, the decedent was found intoxicated and asleep in an unmanned commuter train station

---

[1]We also note that illustration 4 of section 336 is, according to the reporter's note, taken from *Kotoski*. Restatement (Second) of Torts § 336, Reporter's Notes (May 2022 Update).

by railroad personnel but did not receive help for several hours and later died of a cerebral hemorrhage. *Rhodes*, 172 Ill. 2d at 218.

¶ 34    We explained that there is generally no legally recognized common-law duty to aid an injured stranger upon one who did not cause the injury unless a special relationship exists. *Id.* at 232; see also *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 19 (stating that individuals do not owe an affirmative duty to protect or rescue a stranger); *Iseberg v. Gross*, 227 Ill. 2d 78, 98-101 (2007) (stating that, in the absence of special relationship, there is no affirmative duty to protect another from harm); *Parra v. Tarasco, Inc.*, 230 Ill. App. 3d 819, 822 (1992) (same); see also Restatement (Second) of Torts § 314 (1965) (generally the mere fact that an actor realizes or should realize that his action is necessary to aid another, while imposing a possible moral duty to act, does not impose a legal duty to act).

¶ 35    Here, there is no special relationship between the CTA and a trespasser. Additionally, decedent fell from the unauthorized catwalk, which was an injury personal to him through no fault of the CTA. He injured himself by falling from a height in an unauthorized area not open to the public into the open and obvious path of the train. The CTA did not put the decedent in a position of peril.

¶ 36    Nevertheless, unlike the circumstances in *Rhodes*, once the CTA allegedly became aware of his presence in the train tunnel and aware of his alleged inability to escape, the likelihood of being hit by a train was high. We must then consider the magnitude of the burden of guarding against the injury and the consequences of placing the burden on the landowner. *Bogenberger*, 2018 IL 120951, ¶ 22; *Lee*, 152 Ill. 2d at 453; *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 456 (1996).

¶ 37    We have previously explained, when analyzing the duties to be imposed on a transportation company, a court should consider the impact on the company's entire business operation. *Krywin*, 238 Ill. 2d at 234 (the court "may take judicial notice of the magnitude of the CTA's operations" when considering the duty analysis). The CTA and *amici* argue that imposing a duty under these circumstances would place a considerable and unwarranted burden on railroad operators within this state. They argue that imposing a duty to rescue the trespasser would force the CTA and other railroad operators to stop service every time it is unclear whether an object on the track is a human being, essentially undermining the rapid transit system. Additionally, the CTA maintains that creating such a precedent would impose a

duty on the CTA that has not been previous recognized in Illinois—to continuously monitor its security cameras in its underground tunnels in real time. The CTA states that it has about 32,000 cameras across its system. Monitoring them in real time would entail considerable expense and training.

¶ 38     We agree that the magnitude of the burden is extremely high here where such tort exposure is likely to compel railroads to have to greatly modify their operations or operating procedures to identify trespassers on its right-of-way and protect them from the open and obvious danger of moving trains. We also agree that trespassers are in the best position to avoid the injury by refraining from entering the open and obvious area made dangerous by the moving trains.

¶ 39     The consequence of imposing such a duty to rescue under these circumstances also creates risks and safety concerns relating to the CTA train passengers. We recognize that, as a common carrier, the CTA owes "the highest degree of care" to the passengers on board its trains "to carry them safely to their destinations." *Id.* at 226. Every time a train must make an emergency stop, passengers on board may sustain injuries.

¶ 40     Additionally, as *amici* point out, the expansive and varied nature of railroad rights-of-way would render such a duty a highly costly endeavor. Railroads operate day and night, seven days a week, every day of the year. They operate over thousands of miles of track in Illinois, through heavily populated urban, suburban, and rural areas. These areas would need to be monitored day and night against trespassers, which would entail different techniques and resources depending on the location to protect against trespassers on its tracks. The consequence of imposing such a duty would divert public funds to guard against trespassers, undercutting the legislative purpose of the CTA's mass transit system.

¶ 41     Ultimately, the CTA is not an insurer of a trespasser's safety, and its focus must be on ensuring mass transit for the public ridership at large. *Bilyk v. Chicago Transit Authority*, 125 Ill. 2d 230, 243 (1988). While the accident was tragic, to charge the CTA with ensuring a trespasser's safety under the allegations pled here would be unreasonable. Accordingly, we hold that the allegations of the complaint do not fall within a recognized exception to the general rule that a landowner only owes a trespasser a duty not to injure him willfully and wantonly. The CTA owes no legally

- 12 -

recognized duty of ordinary care to rescue a trespasser from his fall in an unauthorized area given the open and obvious danger of a rapid transit train.

¶ 42 Nor do we find that plaintiff has alleged any conduct that supports his willful or wanton theory. In his willful and wanton count, plaintiff asserts that the CTA train operators failed to keep a lookout for objects and persons who might be in the tunnel and failed to monitor the security cameras in the tunnel in real time to determine if people in those areas were endangered. As explained, the CTA does not owe a legal duty to trespassers to either keep a lookout or to monitor its security cameras to keep a lookout for trespassers in real time. See *Anderson v. Chicago Transit Authority*, 2019 IL App (1st) 181564, ¶¶ 44-45 (stating that the CTA owed no duty to monitor security cameras "to look out for disturbed or disoriented individuals").

¶ 43 CONCLUSION

¶ 44 For the reasons stated, plaintiff's second amended complaint was properly dismissed where the CTA did not owe the decedent, a trespasser, a duty of reasonable care and where plaintiff failed to allege any willful or wanton conduct. Accordingly, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 45 Appellate court judgment reversed.

¶ 46 Circuit court judgment affirmed.

¶ 47 JUSTICES NEVILLE and HOLDER WHITE took no part in the consideration or decision of this case.