NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 240314-U

NO. 4-24-0314

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 19, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| BRENT SUNDERMEIER, as Independent Administrator of the Estate of Alexander Shewey, Deceased, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) | Ogle County |
| v. | ) | No. 23LA4 |
| ROGERS READY MIX AND MATERIALS, INC., and | ) | |
| ROBERT A. ROGERS, Individually and as Agent of | ) | Honorable |
| Rogers Ready Mix and Materials, Inc., | ) | Clayton L. Lindsey |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Steigmann and Grischow concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed the circuit court's dismissal with prejudice of plaintiff's first amended complaint.

¶ 2   On September 13, 2023, plaintiff, Brent Sundermeier, as independent administrator of the estate of Alexander Shewey, filed his first amended complaint in this case against Rogers Ready Mix and Materials, Inc. (Ready Mix), and Robert A. Rogers, individually and as an agent of Ready Mix. On October 20, 2023, defendants filed a motion to dismiss plaintiff's first amended complaint. On January 17, 2024, the circuit court granted defendants' motion to dismiss with prejudice. Plaintiff appeals, arguing the court erred by dismissing his first amended complaint. We affirm.

¶ 3                      I. BACKGROUND

¶ 4   On September 13, 2023, plaintiff filed his first amended complaint at law. Plaintiff

alleged Shewey and some of his friends entered an unfenced area of a quarry owned and operated by Ready Mix on June 5, 2022, at approximately 1:30 a.m. The part of the quarry they entered was not surrounded by a fence or other barrier and no signs warned of any dangers or prohibited pedestrians. In addition, "[t]here were no lights in the quarry area." After entering the quarry property, Shewey and his friends came across a narrow, elevated portion of the quarry that was "far and high from the bottom of the quarry" and "surrounded by rocks and gravel." Further, "[t]he bottom of the quarry area contained no lights and was comprised of multiple conditions that obfuscated the risks associated with the quarry, such as numerous large rocks and gravel, and thus were dangerous."

¶ 5        Shewey fell from this elevated portion of the quarry, suffered blunt force trauma to his head and chest as a result of the fall, and died as a result of the injuries he sustained. Plaintiff alleges Shewey would not have been injured or died if the quarry had been surrounded by a fence or protective barrier.

¶ 6        Plaintiff alleged Ready Mix owned, maintained, operated, inspected, and controlled the property at issue and Rogers was an employee and an actual agent of Ready Mix.

¶ 7        According to the complaint, before Shewey's death, Ready Mix knew of several instances where unauthorized individuals had either accessed or attempted to access the property containing the quarry. Plaintiff listed the following three incidents: (1) on August 14, 2001, two trespassers entered one of "Defendants' buildings on the site of the quarry"; (2) on September 29, 2009, a Ready Mix employee reported "someone had attempted to kick in an entrance door to a storage building on the property of the quarry and requested that police perform extra patrols of the property"; and (3) "[o]n April 27, 2016, someone broke a chain link fence on the property of the quarry." Plaintiff alleged Ready Mix (1) had reason to anticipate the presence of individuals it

deemed "unauthorized accessors in dangerous proximity of multiple dangerous, concealed conditions"; (2) "knew or should have known of the concealed dangerous conditions and did not warn pedestrians about the dangers"; and (3) knew or should have known that the area where Shewey fell was not safe.

¶ 8        Assuming, hypothetically, Shewey was a trespasser, plaintiff alleged Ready Mix still had a duty to Shewey to exercise ordinary care because it knew unauthorized individuals had previously been in areas of the quarry it deemed restricted. According to plaintiff's allegations, Ready Mix knew the "non-lit" bottom of the quarry containing large rocks and gravel was a dangerous condition, people were not likely to see how high they were from the bottom of the quarry or recognize the dangerous condition because of the "inadequate lighting," and people were not likely to "appreciate the dangerous conditions because of the setup of the environment surrounding the drop offs."

¶ 9                                    A. Negligence Claims

¶ 10        Count I and II of the complaint were premises liability negligence claims against Ready Mix. Plaintiff alleged Ready Mix had duties to exercise ordinary care to ensure the quarry property was reasonably safe and use ordinary care for Shewey's safety. According to the allegations in count I, Ready Mix individually and through its agents:

> "a. Allowed dangerous conditions of large rocks, gravel, trees, and bushes in a non-lit area below to exist near the drop-off which made it difficult to appreciate the specific areas where there were fall risks surrounding the quarry;
>
> b. Failed to erect a fence or protective barrier around the quarry leading to the area containing the dangerous conditions;
>
> c. Failed to warn against entering the quarry area where it was unclear where

- 3 -

risks existed;

d. Allowed [Shewey] to fall to the area below the elevated portion of the quarry;

e. Failed to see that the areas where pedestrians could enter, without warning, were reasonably safe;

f. Failed to equip the quarry with adequate safeguards as concerns of the public; and

g. Failed to inspect the premises to identify a safety hazard."

¶ 11 Counts VII and VIII were negligence claims against Rogers, alleging Rogers was an actual agent of Ready Mix. Plaintiff alleged Rogers was a manager at the quarry. Plaintiff further alleged Rogers was responsible for the overall operation of the quarry, direction of employees working at the quarry, and supervision of employees working at the quarry; and he had control over the work of employees who inspected the quarry and were responsible for creating site safety at the quarry. According to plaintiff's complaint, it was Rogers's duty to use ordinary care for Shewey's safety, but he committed one or more of the following acts and/or omissions: (1) he failed to properly train employees with job responsibilities that included performing inspections and site safety at the quarry; (2) he failed to direct employees on conducting proper inspections and creating adequate warnings; (3) he failed to see the property was safe; (4) he failed to remedy the unsafe conditions that were present and caused Shewey's death; (5) he failed to implement proper inspection procedures; (6) he failed to properly supervise the employees tasked with inspecting the premises and creating site safety at the quarry; and (7) he failed to provide employees with policies and procedures regarding inspections and site safety creation. Plaintiff alleged Shewey was injured as a direct and proximate result of Rogers's acts or omissions.

¶ 12                    B. Voluntary Undertaking Claims

¶ 13        Counts III and IV of the first amended complaint alleged Ready Mix voluntarily undertook a duty to restrict access to the quarry by taking some measures to restrict access to the property surrounding the quarry, including erecting a fence near the main entrance. Plaintiff alleges Ready Mix should have recognized undertaking the duty to restrict access to the quarry was necessary for the protection of third persons, including Shewey. According to plaintiff, notwithstanding the duty Ready Mix voluntarily undertook, Ready Mix, individually or through its agents:

> "a. Failed to properly restrict access to the most dangerous parts of its property;
>
> b. Failed to readily indicate where walkways ended and drop-offs began;
>
> c. Insufficiently restricted access to the most dangerous areas of its property; and/or
>
> d. Otherwise was inadequate in the performance of its voluntary undertaking in ways to be determined throughout discovery to be plead in amended complaints with leave of court."

Plaintiff alleged Shewey was injured because of Ready Mix's acts and/or omissions.

¶ 14                    C. Willful and Wanton Conduct Claims

¶ 15        Counts V and VI were brought against Ready Mix based on allegations of willful and wanton conduct. According to both of these counts, Ready Mix knew about the dangerous conditions present in the area where Shewey fell, was aware the dangerous conditions were hidden by inadequate lighting, and did not warn pedestrians about those concealed dangers. Additionally, plaintiff again asserted Ready Mix knew people were likely to try to access the unfenced quarry

area based on prior incidents of alleged trespassing and knew a person who accessed the unfenced quarry area would be subject to the dangerous conditions and the deep drop-off where Shewey fell.

¶ 16 According to plaintiff's assertions, Ready Mix knew a fence or protective barrier should have been erected around the entire quarry to prevent pedestrians from entering. However, Ready Mix only erected fences with locked gates around certain areas of the quarry. According to plaintiff, Ready Mix breached its duty to refrain from willful and wanton conduct which would endanger Shewey's safety in the following ways:

"a. Failed to warn pedestrians about the multiple dangerous conditions when [Ready Mix] was aware of them and knew they constituted a concealed dangerous condition;

b. Failed to erect a fence or protective barrier around the entire quarry when [Ready Mix] knew that the dangerous conditions were present and knew they posed a risk of death to people in the area; and/or

c. Did nothing to fix the dangerous conditions that could cause death or warn about the dangerous conditions that could cause death."

Plaintiff alleged Shewey was injured as a direct result of one or more of defendant's acts and/or omissions.

¶ 17 Counts IX and X were brought against Rogers, alleging he had a duty to refrain from willful and wanton conduct which could endanger Shewey's safety. Notwithstanding said duty, plaintiff asserted Rogers:

"a. Failed to train employees to warn against the multiple dangerous conditions when [Rogers] was aware of them and knew they constituted a

concealed dangerous condition;

  b. Failed to instruct employees to erect a fence or protective barrier around the entire quarry when [Ready Mix] knew that the dangerous conditions were present and knew they posed a risk of death to people in the area; and/or

  c. Did nothing to fix the dangerous conditions that could cause death or warn about the dangerous conditions that could cause death."

Plaintiff alleged Shewey was injured as a direct and proximate result of Rogers's acts or omissions.

¶ 18         D. Motion to Dismiss

¶ 19  On October 20, 2023, Ready Mix and Rogers filed a motion to dismiss plaintiff's first amended complaint pursuant to section 2-615 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-615 (West 2022)). Defendants noted plaintiff did not allege Shewey had permission or license to be on the quarry property when he fell. Defendants argued a landowner is not required to (1) keep his land in any particular state or condition to promote the safety of a trespasser or (2) assume a trespasser will expose himself to injury on the landowner's property. According to defendants:

  "The open and obvious danger of falling into a quarry from a height onto large rocks and gravel as alleged by the Plaintiff is apparent from allegations of the Plaintiff's First Amended Complaint. The open and obvious nature is not lost or 'hidden' by the allegation that it was 1:30 a.m. and dark thereby making the edge of the quarry difficult to see and the bottom of the quarry obscured by darkness."

As a result, Rogers and Ready Mix argued they did not owe decedent a duty of reasonable care.

¶ 20  Rogers argued the first amended complaint did not set forth facts that he and Shewey ever stood in a relationship to one another that would impose upon Rogers a duty of care

to the decedent. The allegations against Rogers were based on his alleged role as a manager with Ready Mix, his alleged acts and omissions in the training of Ready Mix's employees, and his alleged failure to implement proper procedures for the protection of the decedent. Rogers argued that he did not have to foresee decedent's trespass onto the property as a matter of law.

¶ 21　　Defendants also argued plaintiff failed to allege facts to support a "frequent" trespasser theory of liability. According to the motion to dismiss, "the Plaintiff allege[d] only one instance of an alleged trespass and two instances of vandalism/property damage over a 21-year period prior to the alleged incident." Defendants further stated, "Plaintiff has not alleged, nor can he allege, any facts that provide notice to [Ready Mix] and or [Rogers] of individuals constantly and persistently intruding upon the subject property in the vicinity of the quarry." Additionally, defendants stated, "There are no facts or allegations that any of the alleged trespasses were permitted by [Ready Mix] or Rogers."

¶ 22　　Defendants also asserted plaintiffs failed to allege a duty under a voluntary undertaking theory of recovery. According to the motion to dismiss, "The Plaintiff's allegations do not amount to a voluntary undertaking as none of the allegations amount [to] misfeasance. Nothing in Plaintiff's First Amended Complaint [rises] to the level of [Ready Mix] voluntarily undertaking a duty to protect trespassers on the premises or near the quarry."

¶ 23　　Further, defendants contended plaintiff failed to allege any proper facts indicating either Ready Mix or Rogers was a proximate cause of the accident.

¶ 24　　On November 30, 2023, plaintiff filed his response to defendants' motion to dismiss. According to plaintiff, whether Shewey was a trespasser was a question of fact. Further, even if Shewey was a trespasser, defendants engaged in willful and wanton conduct because they failed to warn Shewey of hidden dangerous conditions of which they were aware. Plaintiff argued

he had "alleged that Defendants had sufficient reason to anticipate the presence of people who it viewed to be unauthorized accessors in dangerous proximity of multiple dangerous, concealed conditions." According to plaintiff, "Defendants did not restrict access to the area, remedy the concealed dangerous conditions, nor warn people about them." Plaintiff also maintained Ready Mix voluntarily undertook a duty to restrict access to the property surrounding the quarry by erecting a fence on part of the property.

¶ 25 On December 22, 2023, defendants replied to plaintiff's response to the motion to dismiss. Defendants noted plaintiff did not allege Shewey had a right to be on the quarry property either as a licensee or invitee. Based on the allegations of the first amended complaint, defendants argued all reasonable inferences supported a finding Shewey was a trespasser at the time he fell. Defendants also asserted the first amended complaint failed to demonstrate that either Ready Mix or Rogers was a factual or legal cause of Shewey's injuries.

¶ 26 Further, defendants contend plaintiff did not allege any facts making Shewey's conduct of entering the property through an unfenced area foreseeable to defendants. According to defendants, the first amended complaint did not allege the prior trespassers gained entry to the property through an unfenced area. Defendants stated the first amended complaint contained no allegations defendants knew of or allowed trespassers at the location of the quarry or the top of the quarry wall. In addition, defendants argued plaintiffs failed to allege willful and wanton conduct by defendants, Rogers was not a proper party to the case, and plaintiff's claim regarding a voluntary undertaking was meritless.

¶ 27 On January 17, 2024, the circuit court issued a 23-page order and memorandum of decision dismissing plaintiff's first amended complaint in its entirety without leave to replead. The court noted plaintiff conceded at the hearing on the motion to dismiss that the first amended

complaint contained no allegations that decedent was anything other than a trespasser. The court indicated the allegations in the complaint supported no conclusion other than that decedent was a trespasser. As for plaintiff's argument that defendants' habitual acquiescence to other trespassers provided Shewey the status of a licensee, the court ruled the three examples provided by plaintiff of individuals trespassing on the quarry property were substantially remote in time, substantially different in character, and did not suggest defendants tolerated people trespassing on the quarry property. As a result, the court determined defendants only owed a duty to Shewey to refrain from engaging in willful and wanton conduct.

¶ 28 The circuit court also ruled, "The steep cliffs, significant height differentials, sharp rocks[,] and general condition of the quarry" were an open and obvious condition. According to the court: "The fact that [Shewey] entered at 1:30 a.m. when it was dark does not change [d]efendant's duty and, in fact, makes the obligation to foresee and protect against this injury that much more obscure. If anything, the darkness would have increased [Shewey's] appreciation of the risk he was encountering." Next, the court rejected plaintiff's argument defendants voluntarily undertook additional certain activities on Shewey's behalf.

¶ 29 Further, the circuit court ruled plaintiff's allegation the conditions on the property were hidden by inadequate lighting and therefore concealed was not sufficient to support a claim of willful and wanton conduct. Additionally, the court stated plaintiff had failed to allege facts that "[d]efendants committed any act or omission evidencing a deliberate intention to harm [Shewey]." According to the court, the first amended complaint contained no allegations to demonstrate defendant knew Shewey was on the quarry property.

¶ 30 The circuit court found the allegations against Rogers were also deficient for the same reasons.

¶ 31    This appeal followed.

¶ 32                                II. ANALYSIS

¶ 33                        A. Standard of Review and Forfeiture

¶ 34    We apply a *de novo* standard when reviewing a circuit court's decision to grant a motion to dismiss under section 2-615 of the Procedure Code (735 ILCS 5/2-615 (West 2022)). *Quiroz v. Chicago Transit Authority*, 2022 IL 127603, ¶ 11. However, issues not raised in the circuit court are forfeited and may not be raised for the first time on appeal. *Bowman v. Chicago Park District*, 2014 IL App (1st) 132122, ¶ 59.

¶ 35    In addition, pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages relied on." If an appellant fails to properly develop an argument in his opening brief, the argument is "forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 36    An appellate court is entitled to have issues raised on appeal clearly defined and supported with pertinent authority and cohesive legal argument. *Cwik v. Giannoulias*, 237 Ill. 2d 409, 423 (2010). "An issue not clearly defined and sufficiently presented fails to satisfy the requirements of [Rule 341(h)(7)]." *Id.*

¶ 37                B. Motion to Dismiss Pursuant to Section 2-615 or 2-619

¶ 38    In appellant's brief, plaintiff treats defendants' motion to dismiss as if it were filed pursuant to section 2-619 of the Procedure Code (735 ILCS 5/2-619 (West 2022)) instead of section 2-615 of the Procedure Code (*id.* § 2-615). A motion to dismiss filed pursuant to section 2-615 "challenges the legal sufficiency of a complaint by alleging defects on the face of the complaint." *Quiroz*, 2022 IL 127603, ¶ 11. "A motion to dismiss, pursuant to section 2-619 of the

Code, admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

¶ 39        In its written order dismissing plaintiff's first amended complaint, the circuit court indicated plaintiff argued the court should treat defendants' motion to dismiss as filed pursuant to section 2-619 of the Procedure Code because defendants were relying on factual assertions not contained in the first amended complaint. However, the circuit court indicated plaintiff's counsel could not identify any such factual assertions when asked by the court at the hearing on the motion to dismiss.

¶ 40        In his brief, plaintiff offers no real explanation or analysis why the circuit court erred in treating defendants' motion to dismiss as filed pursuant to section 2-615 of the Procedure Code (735 ILCS 5/2-615 (West 2022)). As a result, pursuant to Rule 341(h)(7), plaintiff forfeited this argument on appeal. Regardless of forfeiture, it is clear defendants' motion to dismiss was properly brought pursuant to section 2-615 as they were challenging the legal sufficiency of plaintiff's first amended complaint based on the allegations in the complaint.

¶ 41                    C. Plaintiff's Premises Liability Claims

¶ 42        The overarching issue before this court is whether the circuit court erred by dismissing plaintiff's first amended complaint. When considering a motion to dismiss, a court accepts "as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." (Internal quotation marks omitted.) *Quiroz*, 2022 IL 127603, ¶ 11. A court must also construe the allegations in the complaint in a light most favorable to the plaintiff. *Id.* Further, "[a] court should not dismiss a complaint pursuant to [section 2-615] unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Id.* However, "[a]lthough

the plaintiff is not required to set forth evidence in the complaint, the plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action and not simply conclusions." (Internal quotation marks omitted.) *Id.* ¶ 12.

¶ 43 Plaintiff's claims are based on Shewey's fall from an elevated portion of a quarry Ready Mix owned and operated. Our supreme court has stated: "To recover damages based upon a negligence theory, a plaintiff must plead and prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injury." (Internal quotation marks omitted.) *Id.* "A plaintiff must allege and prove the same elements for a willful and wanton cause of action." *Id.*

¶ 44 1. *Defendants' Duty to a Trespasser*

¶ 45 Initially, we address whether plaintiff's first amended complaint properly alleged facts that would establish (1) defendants owed a legally recognized duty of care to Shewey, (2) they breached that duty, and (3) their breach was the proximate cause of Shewey's injuries. Our supreme court has explained:

> "Whether a duty exists is a question of law for the court to decide. [Citation.] A legal duty refers to a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff. [Citation.] Four overarching factors have guided our duty analysis in any negligence case: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Id.* ¶ 13.

What duty a landowner owes to a person on his property depends on whether the person is an invitee, licensee, or trespasser. *Lange v. Fisher Real Estate Development Corp.*, 358 Ill. App. 3d

- 13 -

962, 966 (2005).

¶ 46 In its order and memorandum granting defendants' motion to dismiss, the circuit court indicated plaintiff conceded the first amended complaint contained no allegation that alleged Shewey was anything other than a trespasser. On appeal, plaintiff does not clearly dispute Shewey's status was that of a trespasser at the time he fell and suffered the injuries which led to his death.

¶ 47 A landowner generally owes no duty of reasonable care to a trespasser other than to refrain from willfully and wantonly injuring them. *Quiroz*, 2022 IL 127603, ¶ 16. "This limited duty is based on the concept that the law does not require an owner or occupier of land to anticipate the presence of persons wrongfully or unexpectedly on his land." *Id.* Yet, plaintiff contends Shewey fell under certain exceptions to the general rule which imposed a duty of reasonable care on defendants.

¶ 48                    a. Habitual Acquiescence Exception

¶ 49 We first address plaintiff's claim this is a situation that falls within the habitual acquiescence exception. According to the First District in *Rodriguez v. Norfolk & Western Ry. Co.*, 228 Ill. App. 3d 1024, 1039 (1992), this exception applies "where habitual acquiescence by the land owner and tolerance is so pronounced that it is tantamount to permission so that the trespasser becomes a licensee."

¶ 50 Pursuant to the allegations in his complaint, plaintiff contends Shewey qualified as "a permitted trespasser and thus a licensee" under the habitual acquiescence theory, which meant defendants owed Shewey a duty of reasonable care. According to appellant's brief, defendants had knowledge of three prior instances of persons trespassing on the property at issue. The three incidents which plaintiff referred to and included in his first amended complaint occurred in 2001,

2009, and 2016. According to appellant's brief, "The history of repeated use of the land by others with defendants' knowledge constitutes implied consent of the defendant for others to use the land as a recreation area."

¶ 51    Plaintiff provides no real analysis regarding how three trespassing incidents in a period of over 20 years before the incident in this case constituted habitual acquiescence of trespassers by defendants. As a result, plaintiff forfeited this argument pursuant to Rule 341(h)(7). Regardless of forfeiture, under the habitual acquiescence or permissive use exception, "a landowner may owe a duty of care to trespassers, other than to refrain from willful and wanton conduct, when the landowner permits regular use of his land for travel." *Rodriguez*, 228 Ill. App. 3d at 1040. Three instances of trespassing over a 20-year period do not equate to a landowner allowing people to regularly use his property for travel.

¶ 52                              b. Voluntary Undertaking

¶ 53    Plaintiff next argues defendants' act of placing a fence around a portion of the quarry to restrict access to that part of the property amounted to a voluntary undertaking enhancing the duty defendants owed to plaintiff. After reviewing this section of appellant's brief multiple times, this court is unclear what plaintiff is arguing because of the internal contradictions in the brief. First, the heading for this section of the brief states defendants' voluntary activity was an act of nonfeasance. Next, plaintiff states, "Where a duty of care is imposed by reason of a voluntary undertaking, breach of that duty can be found only where there is misfeasance rather than nonfeasance." Then, plaintiff states that "[m]isfeasance is the performance of a lawful action in an illegal or improper manner." Plaintiff then states defendants here failed to do something, *i.e.*, "to take the necessary protective steps to ensure the safety of the premises, including failing to properly restrict the most dangerous area (the quarry), and failing to indicate where walkways ended and

drop-offs began." This would appear to be an alleged act of nonfeasance. However, plaintiff then states defendants "acted with misfeasance and breached their duty to Plaintiff."

¶ 54    As stated earlier, an appellate court is entitled to have issues raised on appeal clearly defined and supported with pertinent authority and cohesive legal argument. *Cwik*, 237 Ill. 2d at 423. "An issue not clearly defined and sufficiently presented fails to satisfy the requirements of [Rule 341(h)(7)]." *Id.* Because plaintiff failed to present a cohesive argument with regard to this issue, we find this argument forfeited and address it no further.

¶ 55                    2. *Willful and Wanton Conduct*

¶ 56    We next turn to plaintiff's claims defendants breached their duty to Shewey to refrain from injuring him through their willful and wanton conduct. As noted earlier, plaintiff alleged Shewey entered an unfenced area of the quarry. The quarry had no barrier surrounding it, no lights, no warning signs near where Shewey entered the quarry property, and no warning signs in or near the quarry area warning of any danger whatsoever. Shewey's injuries occurred when he fell from an elevated part of the quarry. According to the complaint, the elevated portion of the quarry where Shewey was walking "was far and high from the bottom of the quarry."

¶ 57    On appeal, plaintiff states:

> "While a landowner's failure to warn of a hidden dangerous condition of which he is aware may constitute willful and wanton conduct, the dangerous condition must be actually hidden. There is no duty to warn of an open or obvious danger of which the licensee or trespasser is also aware. [Citation.] Defendants had a duty to warn Plaintiff that a special danger existed on the premises. Defendants' abandoned efforts to keep trespassers off the premises constitutes a conscious disregard for the safety of others."

Once again, plaintiff's "argument" fails to comply with Rule 341(h)(7). Plaintiff offers no explanation why the elevated quarry wall from which plaintiff fell was hidden or why it was a "special danger." As a result, we find plaintiff has forfeited this argument.

¶ 58 Regardless of forfeiture, Shewey was injured by a fall from an elevated portion of the quarry, which was an open and obvious peril. Obvious dangers include fire, drowning, and falling from a height. *Quiroz*, 2022 IL 127603, ¶ 18. Under Illinois law, property owners are generally under no duty to protect people on their property from open and obvious perils. *Lange*, 358 Ill. App. 3d at 971. "In cases involving open and obvious conditions, the risk of injury is slight because people are expected to appreciate and avoid obvious risks." *Quiroz*, 2022 IL 127603, ¶ 17. Our supreme court stated " '[i]t has never been part of our law that a landowner may be liable to a trespasser who proceeds to wantonly expose himself to unmistakable danger in total disregard of a fully understood risk.' " *Id.* ¶ 18 (quoting *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 39).

¶ 59 Granted, the lack of light at 1:30 a.m. may have affected Shewey's ability to see the drop off from the elevated wall of the quarry. However, an open and obvious condition that is only concealed by darkness is not considered hidden. *Lange*, 358 Ill. App. 3d at 972. As stated earlier, landowners in Illinois are generally under no duty to protect people on their property from open and obvious perils. *Id.* at 971.

¶ 60 "A person's acts are willful and wanton when they are done intentionally or under circumstances exhibiting a reckless disregard for the safety of others." *Morris v. Williams*, 359 Ill. App. 3d 383, 388 (2005). Ready Mix's alleged failures to warn pedestrians of the elevated walls of the quarry (an open and obvious risk), to put a fence or barrier around the quarry (an open and obvious risk), and to fix the dangerous conditions associated with the quarry (an open and obvious

- 17 -

risk) do not rise to the level of willful and wanton conduct. The same is true with regard to Rogers's alleged failure to train Ready Mix employees to warn pedestrians against the dangerous conditions (which were open and obvious risks), instruct employees to erect a fence or protective barrier around the quarry (which was an open and obvious risk), and to fix the dangerous conditions (which were open and obvious risks).

¶ 61                                3. *Excavation Fence Act*

¶ 62         A significant portion of plaintiff's brief discusses the Excavation Fence Act (Act) (430 ILCS 165/0.01 *et seq.* (West 2022)). According to plaintiff, defendants' failure to enclose the entire quarry with a fence violates the Act. Plaintiff states, "A jury could reasonably infer that but for Defendant's violation of the [Act], there would have been no occurrence and no injury to the Plaintiff."

¶ 63         As noted earlier, issues not raised in the circuit court are forfeited and may not be raised for the first time on appeal. *Bowman*, 2014 IL App (1st) 132122, ¶ 59. Defendants state in their brief before this court that the Act "was never raised in any way, shape, or form, by anyone in the trial court." Plaintiff failed to file a reply brief to dispute defendants' claim. Based on our review of the record, it does not appear the Act was ever brought to the attention of the circuit court. Therefore, we find plaintiff forfeited any argument he may have had regarding the Act's applicability to this case.

¶ 64                                III. CONCLUSION

¶ 65         For the reasons stated, we affirm the dismissal with prejudice of plaintiff's first amended complaint. We commend the circuit court for its detailed order addressing the parties' respective arguments.

¶ 66         Affirmed.