# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *McDonald v. Northeast Illinois Regional Commuter R.R. Corp.*,
### 2013 IL App (1st) 102766-B

---

| | |
|---|---|
| Appellate Court Caption | MARJORIE McDONALD, Executrix of the Estate of Thomas McDonald, Deceased, and MARJORIE McDONALD, Individually, Plaintiffs-Appellees, v. NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, d/b/a Metra/Metropolitan Rail, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-2766 |
| Filed | April 16, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant commuter railroad did not owe plaintiff's decedent any duty to warn him of an oncoming train, since the danger the train posed was open and obvious, yet decedent tried to cross the tracks before the train arrived at the station; therefore, the denial of defendant's posttrial motion for judgment *n.o.v.* was reversed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-2551; the Hon. Arnette R. Hubbard, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

James A. Fletcher and Peter C. McLeod, both of Fletcher & Sippel LLC, and Sue-Ann Rosen, of Metra Law Department, both of Chicago, for appellant.

Leslie J. Rosen, of Chicago, for appellee.

Panel

JUSTICE SIMON delivered the judgment of the court, with opinion. Justices Quinn and Neville concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant, Northeast Illinois Regional Commuter Railroad Corp., d/b/a Metra, appeals from orders of the circuit court of Cook County entering judgment on the jury's verdict in favor of plaintiff, Marjorie McDonald, individually and as the executrix of the estate of the decedent, Thomas McDonald, and denying defendant's posttrial motion for a judgment *n.o.v.* or a new trial. This court affirmed the circuit court's orders, concluding that defendant had a duty to warn the decedent of the oncoming train, that the jury's answers to the special interrogatories were not inconsistent with its verdict, that plaintiff presented sufficient evidence to prove that defendant's negligence was a legal cause and a cause in fact of the accident, and that defendant was not prejudiced by the circuit court's alleged error in allowing plaintiff to present evidence showing that defendant was negligent for having failed to install and activate pedestrian signals and argue that claim to the jury. *McDonald v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 102766. Our supreme court subsequently decided *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, and, in the exercise of its supervisory authority, directed this court to vacate its previous order and reconsider the prior decision in light of *Choate*. *McDonald v. Northeast Illinois Regional Commuter R.R. Corp.*, No. 112971 (Ill. Jan. 30, 2013) (supervisory order). For the reasons that follow, we reverse.

¶ 2                                    BACKGROUND
¶ 3    On August 21, 2007, plaintiff filed an amended complaint in which she asserted that defendant operated a train station at 3000 Willow Road in Glenview, Illinois (North Glenview station), and that on April 25, 2002, the decedent was struck by one of defendant's trains that was running express through the North Glenview station toward Chicago as the decedent crossed the tracks at the pedestrian crosswalk. Plaintiff also asserted that defendant had installed pedestrian signals at the North Glenview station, but had not yet activated them at the time of the accident, and that the decedent had since died of causes unrelated to the accident.

¶ 4    Plaintiff alleged that defendant owed the decedent the highest duty of care because it was

a common carrier with respect to its operation of the North Glenview station and the passengers intending to board the trains therein and that defendant breached its duty by operating a train through the station without having activated the pedestrian signals it had previously installed; allowing the public to access the station when it knew it did not have adequate protections in place for the safety of pedestrians; failing to adequately warn the decedent that the pedestrian signals had not been activated; operating a train without keeping a sufficient lookout; failing to adequately warn the decedent of the approach of the train; operating its train at an excessive rate of speed given the fact that the pedestrian signals had not been activated; failing to adequately slow the train and avoid hitting the decedent; and/or failing to activate the pedestrian signals that had previously been installed. Plaintiff also alleged that as a result of one or more of defendant's breaches of its duty of care, the decedent sustained personal and pecuniary injuries and plaintiff sustained a loss of consortium, society, and support.

¶ 5		The record shows that defendant owned and operated the Milwaukee North Line, which consisted of two parallel tracks that ran north and south through the North Glenview station on its way to and from Chicago and Fox Lake, Illinois. Southbound trains ran on the west tracks and northbound trains ran on those to the east. At the time of the accident, a parking lot had been constructed to the east of the North Glenview station. Thus, a passenger who had parked in the parking lot and intended to board a southbound train would have to cross over both tracks at the crosswalk from the east platform to the west platform prior to the arrival of the train.

¶ 6		Plaintiff testified at trial that she and the decedent had not been to the North Glenview station prior to the accident, but had been to the other Glenview station about 30 times over the previous 3 years, and that the decedent had always obeyed the lights and bells that activated when a train was approaching a crossing. On the morning of the accident, plaintiff and the decedent parked their car in the parking lot to the east of the train tracks at the North Glenview station, and the decedent realized he had forgotten his change in the car as they started walking toward the station. Plaintiff continued across the tracks to the station, and the decedent returned to the car. Plaintiff waited for the decedent on the platform on the west side of the tracks and saw him walking toward the platform, then looked to the north and saw a train in the distance. Plaintiff attempted to catch the decedent's attention and said "why don't you wait," but she did not know if he heard her. Plaintiff heard the train's horn blow when the decedent was halfway across the crosswalk and saw him try to hurry across in response. The decedent barely made it across the crosswalk before the train arrived, but was blown back into the train by the force of its accompanying wind, and then landed on the platform. The decedent's arm was bleeding, and an ambulance arrived at the station a few minutes later and transported him and plaintiff to Lutheran General Hospital.

¶ 7		On cross-examination, plaintiff stated that at the time of the accident, the decedent did not wear a hearing aid, had good hearing for someone who was 79 years old, and only wore glasses for reading. Plaintiff also stated that when she tried to get the decedent's attention and said "why don't you wait," he was just beginning to cross over from the platform to the east of the tracks to the crosswalk. While plaintiff could not remember whether the decedent looked both ways before crossing the tracks, she stated that he probably would have been

able to see the approaching train had he looked north before traversing the crosswalk. Plaintiff further stated that the train's horn sounded several seconds before the accident and that the decedent would have been out of the train's way had he stopped and taken a step back after hearing the horn.

¶ 8 William Porter, the director of public works for the Village of Glenview at the time of the accident, testified that the North Glenview station opened on January 7, 2001, in an area of Glenview previously occupied by a naval base. Defendant opened the station even though the pedestrian signals, which had been installed at the other Glenview station in the 1980s and were to flash lights and ring bells as a train was approaching, had not been completed. Porter believed the station should have been equipped with pedestrian signals, and he had public works crews from Glenview install signs on the barricades at the pedestrian crossing which directed patrons to "stop, look, and listen." At the time of the accident, the pedestrian signals were set to be in service by May 10, 2002. On cross-examination, Porter stated that defendant put up signs at the crosswalk that said "CAUTION!," "HIGH SPEED TRAINS," and "LOOK BOTH WAYS BEFORE CROSSING" shortly after January 11, 2001, and that at the time of the accident, the signal heads for the pedestrian signals were in place and covered with black plastic bags.

¶ 9 Glenford Peters, defendant's project manager in charge of designing the North Glenview station, testified that the final set of drawings for the station provided for a location where pedestrian signals were to be installed and stated on cross-examination that he did not know why the signals had not been installed by the time the station was opened and that he helped in putting together a sign that was to be mounted on the inner track fence to warn of approaching trains. Frank Baranski, an employee in defendant's signal department, testified that the signal design for the North Glenview station was completed in November 2001 and that pedestrian signals were designed to provide commuters with a 20-second warning of approaching trains, which was the standard minimum warning time provided by the Federal Railroad Administration (FRA).

¶ 10 Eugene Holland, a consulting engineer and licensed structural engineer in the State of Illinois, testified that pedestrian warning signals provide a commuter with a warning that a train's arrival is imminent and opined within a reasonable degree of engineering certainty that defendant should not have opened the North Glenview station until after such signals had been completed because commuters were not provided with a prewarning that a train was approaching. On cross-examination, Holland stated that the decedent would have been able to see the approaching train had he looked both ways before attempting to cross the tracks.

¶ 11 After plaintiff rested her case-in-chief, defendant called Daniel Orseno, who worked for defendant as the superintendent of the Milwaukee District and investigated the accident at the request of defense counsel to determine whether Brian Voss, the engineer of the train involved in the accident, had properly operated the train. Orseno testified that an engineer was required to activate the train's bell at least a quarter-mile before reaching a station at which the train was not going to stop, keep a lookout to make sure the track was clear, sound the train's horn as a warning if someone was in harm's way, and put on the emergency brakes if a person did not get off the tracks following the warning horn. Once the emergency brakes had been applied, there was nothing else an engineer could do to slow down or stop the train.

¶ 12    Based on his investigation, Orseno believed that on the morning of the accident, Voss was operating a southbound train and the decedent attempted to cross the tracks from east to west at the crosswalk at the North Glenview station. Orseno determined that Voss activated the train's bell about 40 seconds and more than a half-mile before reaching the station, sounded the horn 7 to 8 seconds before the train reached the crosswalk, and applied the emergency brakes 6 to 7 seconds before reaching the crosswalk. Orseno opined that Voss fulfilled his responsibilities as an engineer to keep a lookout, activate the train's bell, sound its horn, and apply the emergency brakes on the morning of the accident.

¶ 13    On cross-examination, Orseno stated that pedestrian signals were to be activated 20 seconds before an approaching train reached the station, that Voss would not have been doing his job properly if he had waited until the decedent was halfway across the crosswalk to sound the train's horn, and that based on additional observations made by a Glenview police officer, it was possible that Voss did not sound the train's horn until six seconds before it reached the crosswalk. On redirect, Orseno testified that he believed Voss blew the train's horn when the decedent was on the tactile strip on the edge of the east platform before he stepped foot on the crosswalk.

¶ 14    Arlene Landsman testified that she was on the east platform at the North Glenview station a few minutes after 8:20 a.m. on April 25, 2002, when she saw a man walking from the platform to the crosswalk as a train approached from the north. Landsman heard the train's bells and horn and saw that it was approaching quickly, and the man stepped onto the crosswalk and quickened his pace as he walked across while the bells and horn continued to sound.

¶ 15    David Chidlow testified that he was on his phone while at the North Glenview station on the morning of the accident when he saw plaintiff and the decedent standing on opposite sides of the crosswalk as a train approached from the north. The decedent was on the east side of the tracks and plaintiff was on the west, and plaintiff was telling the decedent to stay on his side of the tracks and wait for the next train. The decedent responded that he could make it across before the oncoming train arrived and tried to run across the tracks. Chidlow did not remember hearing a bell or horn before the train arrived at the station. After the train passed, Chidlow went across the tracks, saw the decedent lying on the ground, and called 911.

¶ 16    Brian Voss testified that he was an engineer and operated one of defendant's trains on the morning of April 25, 2002, which departed from Fox Lake at 7:34 a.m., and was scheduled to arrive at Union Station in Chicago at 8:53 a.m. The train consisted of an engine, five coaches, and a cab car, and Voss operated the train from the cab car at the front of the train while the engine pushed the cars from behind. The train was scheduled to run express through North Glenview on the way from Northbrook to the old Glenview station. The speed limit for that section of track was set by the FRA at 79 miles per hour, and Voss did not exceed the speed limit on the morning of the accident.

¶ 17    Voss also testified that he activated the train's bell well before he was within a quarter-mile of the North Glenview station and that the train's oscillating headlights were on as he approached the station, as were the ditch lights, which began to flash when he activated the

bell. As he approached the station, Voss saw the decedent, who was on the east platform, walk toward the tracks. When the decedent reached the yellow tactile strip on the edge of the platform by the crosswalk, Voss began to blow the train's horn because it looked as though the decedent was going to go across the crosswalk. At that time, the train was traveling at close to 70 miles per hour. After Voss sounded the horn, the decedent stepped onto the crosswalk and began to hurry across. Voss applied the emergency brakes as soon as he saw the decedent step onto the crosswalk and heard a thud from the right edge of the cab car when it passed the crosswalk. On cross-examination, Voss stated that the decedent paused for a split second when he sounded the train's horn.

¶ 18    Following closing arguments, the jury returned a verdict in favor of plaintiff and assessed $700,143.70 in damages. In doing so, the jury found that plaintiff suffered $1,166,906.18 in damages as a proximate result of the accident and that 40% of the negligence that proximately contributed to plaintiff's injuries was attributable solely to the decedent. The jury also provided answers to five special interrogatories, in which it related that it found that: (1) defendant did not provide the decedent with adequate warning that its train was approaching the North Glenview station; (2) the decedent walked in front of defendant's train when he knew or reasonably should have known that it was unsafe to do so; (3) Voss kept a proper lookout for the decedent; (4) Voss did not sound the horn in a timely manner; and (5) Voss applied the brakes in a timely manner. Defendant filed a posttrial motion asking the circuit court to grant it a judgment *n.o.v.* or, in the alternative, a new trial, and the court denied the motion.

¶ 19                                    ANALYSIS

¶ 20    Defendant contends that it was entitled to a judgment *n.o.v.* because it did not have a duty to warn the decedent of the oncoming train where the decedent knew of its approach and the danger it presented was open and obvious. A trial court may only enter a judgment *n.o.v.* where all the evidence, viewed in the light most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict could stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967). A motion for a judgment *n.o.v.* presents a question of law as to whether there was a total failure to present evidence to prove a necessary element of the plaintiff's case, and we therefore review the circuit court's ruling on such a motion *de novo*. *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006).

¶ 21    To recover damages based on defendant's alleged negligence, plaintiff was required to allege and prove that defendant owed a duty to the decedent, that defendant breached that duty, and that the breach was the proximate cause of the alleged injuries to plaintiff and the decedent. *Thompson v. County of Cook*, 154 Ill. 2d 374, 382 (1993). The issue of whether a duty exists presents a question of law for this court to decide by determining whether there is a relationship between the parties requiring the imposition of a legal obligation upon one party for the benefit of the other. *Washington v. City of Chicago*, 188 Ill. 2d 235, 239 (1999). If defendant did not owe a duty to the decedent, then a judgment *n.o.v.* is required. *Id.* at 238-39.

¶ 22    A landowner owes a duty of reasonable care regarding the state of its premises and the acts conducted thereon to all entrants upon its land except for trespassers. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 228 (1996). The open and obvious doctrine is an exception to that general duty of reasonable care (*Park v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶ 12) and provides that the landowner is not liable for physical harm to individuals caused by any activity or condition on the land whose danger is known or obvious unless the landowner should anticipate the harm despite such knowledge or obviousness (*Sollami v. Eaton*, 201 Ill. 2d 1, 15 (2002); Restatement (Second) of Torts § 343A(1) (1965)).

¶ 23    Defendant asserts that it was not required to warn the decedent of the oncoming train because the danger posed by the train was open and obvious. In *Choate*, 2012 IL 112948, the plaintiff, a 12 year-old boy, was seriously injured when he fell while attempting to jump onto a moving freight train that was running on the defendants' tracks, and our supreme court held that the defendants were entitled to a judgment *n.o.v.* on the plaintiff's personal injury action because the defendants did not owe the plaintiff a legal duty. In reaching its decision, the court noted that the plaintiff was a trespasser on the defendant's property and that while a landowner is generally under no duty to maintain its premises for the safety of trespassers, an exception to the rule exists for child trespassers. *Id.* ¶¶ 24-27. The exception only applies, however, if the dangerous condition is likely to injure children because they are incapable, based on age and maturity, of appreciating the risk involved, and the court noted that a defendant has no duty to remedy a dangerous condition if it presents obvious risks that a child of the plaintiff's age would be expected to appreciate and avoid. *Id.* ¶ 31. The court concluded that the child trespasser exception did not apply to the plaintiff in *Choate* because a child of the plaintiff's age would be expected to appreciate and avoid the danger of a moving train, and the court held that "we now explicitly recognize as a matter of law that a moving train is an obvious danger [and] that any child allowed at large should realize the risk of coming within the area made dangerous by it." *Id.* ¶ 35.

¶ 24    In this case, the evidence, viewed in the light most favorable to plaintiff, shows that the decedent was halfway across the crosswalk and between the northbound and southbound tracks when he heard the horn of the oncoming train. The evidence also shows that the decedent would have remained out of the way of the oncoming train had he stopped and taken a step back when he heard the train's horn and that he probably would have been able to see the approaching train had he looked north before traversing the crosswalk.

¶ 25    Pursuant to *Choate*, we determine that the oncoming train in this case was an open and obvious danger because the decedent could have seen it approaching the station had he looked both ways prior to stepping on the crosswalk, the decedent was made aware of its approach by its horn prior to stepping in its path, and the decedent had time to stop and step back away from the track before it arrived. We also determine that the tracks in front of a moving train constitute an area made dangerous by the train and that the decedent should have realized the risk of entering that area and attempting to hurry across the tracks in advance of the train's arrival. As such, we conclude that the danger posed by the oncoming train in this case was open and obvious and that the decedent should have realized the risk of trying to hurry across the tracks before it arrived at the station.

¶ 26     Our conclusion that the train is an open and obvious danger, however, does not serve as a *per se* bar to a finding that defendant owed the decedent a legal duty of reasonable care because such a duty may arise under the "distraction exception" or the "deliberate encounter exception" to the open and obvious rule. *Sollami*, 201 Ill. 2d at 15. Under the "distraction exception," a duty may arise if defendant had reason to expect that the decedent may be distracted so that he would not discover the obvious danger, forget that he has discovered it, or fail to protect himself against it. *Id.* However, there is no evidence that the decedent was distracted when he crossed the tracks or that defendant would have had any reason to expect that the defendant would be distracted.

¶ 27     Under the "deliberate encounter exception," a duty may arise if defendant had reason to expect that the decedent would proceed to encounter the obvious danger because a reasonable person in the decedent's position would decide that the advantages of doing so outweighed the apparent risk. *Id.* While it may be true that people sometimes attempt to cross the tracks in front of an oncoming train because they believe the advantages of making their train outweigh the risk of being struck by the train, individuals who do so are not exercising reasonable care for their own safety at that time. *Park*, 2011 IL App (1st) 101283, ¶ 18. Therefore, the "deliberate encounter exception" does not apply in this case.

¶ 28     As such, we conclude that defendant did not owe the decedent a legal duty to warn him of the approach of the oncoming train because the danger posed by the train was open and obvious where the decedent knew the train was coming before he stepped in front of it and attempted to cross the tracks before it arrived. As defendant did not owe a duty to the decedent, defendant was entitled to a judgment *n.o.v.* (*Washington*, 188 Ill. 2d at 238-39), and we reverse the circuit court's order denying its posttrial motion for a judgment *n.o.v.* As a result, we need not consider defendant's additional claims, including whether plaintiff was barred from presenting evidence and argument regarding defendant's failure to install and activate pedestrian signals by sections 3-104 (745 ILCS 10/3-104 (West 2002)) and 2-109 (745 ILCS 10/2-109 (West 2002)) of the Local Governmental and Governmental Employees Tort Immunity Act because we may only consider the issue of whether an immunity or defense is available to a governmental entity if we first determine that the entity owed a duty to the plaintiff (*Zimmerman v. Village of Skokie*, 183 Ill. 2d 30, 46 (1998)).

¶ 29                                         CONCLUSION

¶ 30     Accordingly, we reverse the judgment of the circuit court of Cook County.

¶ 31     Reversed.