2023 IL App (1st) 220529-U

No. 1-22-0529

Order filed December 20, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DEWANNA STONE, Independent Administrator of the Estate of Lateasha K. Phillips, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18 L 3076 |
| THE NORTHEAST ILLINOIS REGIONAL COMMUTER RAILWAY CORPORATION, an Illinois Corporation d/b/a METRA, | ) ) ) ) | |
| Defendant-Appellee. | ) ) ) | Honorable Marcia Maras, Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice R. Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The judgment of the trial court, granting summary judgment in favor of defendant on the basis that defendant owed no duty of care to decedent, is affirmed.

¶ 2    Plaintiff Dewanna Stone, the administrator of Lateasha Phillips's estate, brought a survival

and wrongful death action against defendant Northeast Illinois Regional Commuter Railway

Corporation d/b/a METRA (Metra) after Phillips was struck and killed by a Metra train. The trial court granted summary judgment in favor of Metra, and plaintiff now appeals.

¶ 3    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 4                                    I. BACKGROUND

¶ 5    Metra is a governmental entity organized pursuant to the Regional Transportation Authority Act, 70 ILCS 3615/1.01 *et seq*. (West 2018). It owns and operates multiple passenger service train lines in the Chicago, Illinois area. One such line runs from downtown Millenium Park to University Park, a southern suburb of Chicago. The 47th Street Station (Station) lies along this University Park line. On January 15, 2018, Phillips was waiting at the Station when she was struck and killed by an express train passing through the station at 60.9 miles per hour.

¶ 6    Plaintiff's first of two counts alleged a survival action, claiming that defendant owed Phillips the highest degree of care as a passenger and that defendant: (1) operated the train at excessive speed; (2) failed to apply the brakes or stop the train to avoid hitting Phillips; (3) failed to maintain safety devices at the Station that would have prevented the accident; (4) failed to adequately sound the train's horn to warn Phillips; and (5) failed to notify Phillips that a train was approaching the inside track. Plaintiff's second count alleged wrongful death and cited the same five failures on the part of defendant.

¶ 7    Defendant answered and asserted affirmative defenses that: (1) Phillips was trespassing at the time she was struck by the train; (2) excessive speed claims were preempted by federal law; (3) Metra was entitled to tort immunity pursuant to 745 ILCS 10/1-206 *et seq*.; and (5) a moving

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

train was an open and obvious hazard. Plaintiff ultimately voluntarily dismissed the survival action.

¶ 8 Following extensive discovery, defendant moved for summary judgment on July 23, 2021, and attached a number of deposition transcripts, affidavits, photographs, and other evidence. One of these affidavits, that belonging to Corinna Gallardo Jerbis, a manager in defendant's customer communications department, averred that Metra used a communication system to broadcast the status of trains, including warnings that alert passengers a train is approaching. Jerbis's affidavit further averred that the system made two announcements at the Station on January 15, 2018, one at 11:13:34 a.m., and another at 11:29:14 a.m. The former told passengers that a train bound for Chicago was arriving and warned passengers to remain behind the yellow lines. The latter informed passengers that the next approaching train was an express train and would not stop.

¶ 9 Plaintiff moved to strike Jerbis's affidavit on September 9, 2021, on the basis that Jerbis was not present at the Station on January 15, 2018, and had no first-hand knowledge that those announcements were made at the Station, or if they were, whether they were audible. Instead, plaintiff claimed that Jerbis's affidavit was based purely on data from Metra's computer system.

¶ 10 On November 17, 2021, the trial court granted plaintiff's motion to strike in part, striking only the paragraph which averred that the two announcements were made at the Station on January 15, 2018.

¶ 11 On December 21, 2021, plaintiff filed a response to defendant's motion for summary judgment. That response included the affidavit of Charles L. Culver, a private railroad operations consultant, which offered a number of opinions. First, Culver stated that Phillips would not have been struck by a train if a gate had been in place at the ground level of the Station at 47th Street,

and that the Station itself obstructed the view of Phillips as she stood on the ground next to the tracks. He also opined that the train engineer, Todd Thompson, failed to apply the brakes in a timely manner and failed to reduce his speed. Culver opined that yellow markings on the stairs at the Station were confusing and de-emphasized the importance of the yellow lines that demarcated areas where individuals should not stand. Finally, Culver opined that Phillips was not trespassing and that defendant owed Phillips the highest duty of care. On defendant's motion, the trial court struck Culver's affidavit in its entirety on February 22, 2022.

¶ 12    The following is a summary of the remaining relevant evidence with which the trial court evaluated defendant's motion for summary judgment.

¶ 13    The Station is elevated and accessible via 47th Street, which runs underneath the Station. Once up the stairs, passengers find themselves on a landing at ground level with the tracks with chain-link fence on either side of them. Openings on either side of the fence, marked by a yellow line, allow for access to the tracks themselves. A chain is sometimes in place across these openings, but it could be removed at times such as during snow removal. Another small set of stairs leads to an elevated platform from which passengers can board trains. Yellow lines run the length of the platform on either side. Individuals must remain behind these lines until approaching trains have come to a complete stop. Metra stations ordinarily play automated announcements that alert passengers to approaching trains and remind them to stay behind the yellow line, or that the next inbound train is an express train that will not stop. However, there was no first-hand evidence available that either of those messages were audible at the Station on the morning Phillips was struck and killed. The record contains a number of photographs depicting the Station and its surroundings in addition to testimony describing the Station. Overhead photographs also show that

the tracks running north and south from the Station are straight, and there are no trees or other objects that would obscure vision of oncoming trains.

¶ 14     Two tracks are located to the west of the boarding platform; track 1 is the farthest west while track 2 is adjacent to the platform. Trains heading southbound use tracks 1 and 2. Tracks 3 and 4 are east of the boarding platform, with track 4 being farthest east while track 3 is adjacent to the boarding platform. Northbound trains utilize tracks 3 and 4. A wooden cross-walk extends west from the track-level landing all the way to track 1, and east all the way to track 4. Trains traveling southbound typically use track 2, allowing passengers to board using the platform. Boarding a train on track 1 requires walking across track 2 and boarding from track-level, but such boarding is rare and typically only occurs when a track is out of service because of the danger to passengers walking across the tracks. In the event that track-level boarding from track 1 or 4 becomes necessary, the train's conductor would descend from the train, walk across the tracks, remove the chain across the gap in the fence, if present, and escort passengers across the tracks and to the train.

¶ 15     On the morning of January 15, 2018, it was snowing and Metra employees were present at the Station, having finished clearing and salting the boarding platform, landing, stairs, and track-level platform. At the time of the incident, they were sitting inside their work truck, which was parked next to track 1, facing north. Train 219 left the Station heading southbound on track 2 at 11:12 a.m. Phillips purchased a one-way ticket to Homewood at 11:26 a.m. The next scheduled stop at the Station was not until 11:52 a.m. Jazzmine Waller, Phillips's sister, said she had used Metra trains repeatedly with Phillips and that Phillips understood the purpose of staying behind the yellow line to avoid being hit by a train. She also stated that Phillips had no problems with her hearing or eyesight.

¶ 16    Train 119, an express train, left Millenium Park, en route to University Park at 11:20 A.M. It had no scheduled stop at the Station. Thompson, Train 119's engineer, was in the controller's compartment and was the only eyewitness to the accident. Train 119's event recorder confirmed that its headlights, oscillating lights, and bells were all functioning as it approached the Station on track 2. It also had red reflector tape affixed to the front. According to Thompson, track speed, or the maximum allowable speed, for that area was 65 miles per hour. Thompson believed the train was traveling at least 60 miles per hour, but he was unsure of its exact speed.

¶ 17    As Train 119 approached the Station on track 2, Thompson saw someone move out toward the track, and then move back toward the station. He first blew the train's horn as a warning. When he saw the Metra truck parked by track 1, he presumed that the person he saw was a Metra employee because they were beyond the yellow line on the ground. He then used the horn twice, which he described as the designated way of recognizing Metra employees. Upon realizing that the individual, later identified as Phillips, was not wearing a work vest, he repeatedly blew the train's horn to warn her. As the train got closer to the station, Phillips was standing on the ground several feet from the tracks. A still photograph taken from Train 119's camera, when the train was perhaps 50 to 100 feet away from Phillips, shows Phillips facing south, away from the train. It appears she had one foot on the wooden walkway and one foot in the rocks around the tracks, otherwise known as ballast.

¶ 18    Thompson "laid on the horn" as the train drew near to Phillips and, before he lost sight of her, saw her reach out and turn into the path of the train. He then heard the impact as the train struck her. The train's event recorder showed that the train was traveling 60.9 miles an hour when it struck and killed Phillips instantly. Although Thompson was unsure whether he applied the

brakes just prior to the impact or immediately after, the event recorder showed that it took the train approximately a quarter of a mile to come to a stop. There was no evidence taken from any witness that the train could have stopped in time to avoid hitting Phillips once it became clear that she was not moving out of the way.

¶ 19    A video taken from Train 119 in the moments leading up to and encompassing the accident is also included in the record on appeal. There is approximately 34 seconds of footage prior to the accident as Train 119 approaches the Station. A front-facing camera shows Train 119 heading toward the Station, while a second rear-facing camera captures the left side of the train. Although the video is of poor quality and has no sound, Phillips can be seen standing next to the tracks at ground-level as Train 119 approaches the Station. Phillips is facing away from the train the entire time until she disappears from the camera's field of view as the train bears down on her. The rear-facing camera shows that there was perhaps a foot or less of space between the train and the boarding platform.

¶ 20    Subsequent investigation revealed blood and an impact mark on the front of the train. William Greene, a Metra safety officer, testified at his deposition that he investigated the accident and classified Phillips as a trespasser. When asked to explain that classification, he replied, "Because that person was in the foul of the track."[2] Greene explained that possession of a ticket has no bearing on whether someone is considered a trespasser if they are in the foul of the tracks. Even ticketed passengers are not allowed to pass the yellow lines until a train entering the station

---

[2] Deposition testimony defined fouling a track as being in close proximity to a track. The Code of Federal Regulations also provides that "fouling a track means the placement of an individual or an item of equipment in such proximity to a track that the individual or equipment could be struck by a moving train or on-track equipment, or in any case is within four feet of the field side of the near running rail." 49 C.F.R. § 214.7.

comes to a complete stop, and defendant regards anyone venturing beyond those yellow lines, outside of boarding a train, as a trespasser.

¶ 21     On April 14, 2022, the trial court found that the open and obvious nature of the train precluded the imposition of any duty on the part of defendant toward Phillips and granted defendant's motion for summary judgment.

¶ 22                               II. ANALYSIS

¶ 23     Plaintiff raises a number of different issues including: (1) the trial court improperly granted summary judgment because there are disputed material facts; (2) Phillips was a passenger; (3) Phillips was not a trespasser; (4) defendant owed Phillips a duty of care despite the open and obvious nature of the train that struck her; and (5) a claim that the train was traveling at an excessive speed is not preempted by federal law. As these questions are all, in one way or another, related to the issue of whether summary judgment was appropriate, they will be addressed as parts of the same analysis. However, before addressing plaintiff's contentions, we must first address defendant's request to strike portions of the appellant's brief and the attached appendix for failure to comply with Supreme Court Rules 341 and 342.

¶ 24                       A. Compliance with Rules 341 and 342

¶ 25     Defendant contends that the appellant's brief repeatedly relies on the contents of Culver's stricken affidavit and that the appendix contains documents that are not part of the record on appeal.

¶ 26     Failure to comply with the rules governing appellate briefs is not an inconsequential matter, and a party's failure to comply with Rule 341 is grounds for disregarding its arguments on appeal. *Burmac Metal Finishing Co. v. West Bend Mut. Ins. Co.*, 356 Ill. App. 3d 471, 478 (2005). Rule

341's requirements are not mere suggestions, and this court has the inherent authority to strike briefs, or even dismiss appeals entirely, when an appellant's brief fails to conform to Rule 341. *People v. Williams*, 2020 IL App (3d) 180024, ¶ 25. A party generally may not rely on matters outside the record to support its position on appeal. *Keener v. City of Herrin*, 235 Ill. 2d 338, 346 (2009). When a party's brief fails to comply with that rule, a court of review may strike the brief, or simply disregard the inappropriate material. *Id.*

¶ 27    We begin with the appendix to the appellant's brief, which contains three documents. The first is a hand-drawn diagram of the Station, which was not contained in the record on appeal and is of unverifiable origin. The second is a black and white photograph contained in the record on appeal showing the Station's ground-level landing, the stairs leading to the boarding platform, and the ground-level chain-link fence with its opening that leads to the tracks. The yellow line across the fence's opening is visible on the ground. The third document contains data which plaintiff asserts is the speed of Train 119 in the minutes leading up to the accident, but this document, too, does not originate from the record on appeal. Rather than strike the appendix, we elect the alternative course, and we will simply disregard the documents that are not part of the record. However, we must also note that the appendix attached to the appellant's brief contains none of the documents required by Rule 342. Ill. S. Ct. R. 342 (eff. Oct. 1, 2019).

¶ 28    Next is the issue of plaintiff's reliance on facts that were contained in Culver's stricken affidavit. As defendant rightly points out, plaintiff has not challenged the trial court's decision to strike Culver's affidavit. Nevertheless, the appellant's brief repeatedly references facts and opinions contained within Culver's stricken affidavit. For example, plaintiff claims that the Station's structures can obstruct vision of oncoming trains, and that Thompson failed to apply the

train's brakes in a timely manner, both of which were opinions offered by Culver and no one else. Like plaintiff's appendix, we elect to disregard any facts or arguments based on Culver's affidavit in our summary judgment analysis.

¶ 29     Finally, it must be said that the compliance of the appellant's brief with Rule 341 is minimal, at best. Although Rule 341 is clear that factual assertions must be supported by citations to the record on appeal, and argument must be supported by authority and citation to the record, the appellant's brief frequently foregoes these requirements. Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020). The appellant's brief, for instance, contains an initial "Introduction" section, which is not one of the required components of a brief, that is comprised of nearly four pages of argument with few citations to the record and legal authority. Likewise, the "Statement of Facts" is similarly replete with factual assertions completely unsupported by citations to the record. The "Argument" section does not fare any better and contains entire swaths of argument which do not cite to the record on appeal or to authority. The reply brief, on the other hand, does not contain a single citation to the record on appeal in fifteen pages of text. Not only does the appellant's brief repeatedly fail to provide required citations, but it also makes continued assertions that are completely contradicted by the record. For example, the appellant's brief routinely refers to the gap in the chain link fence at the Station as a "gate," when that is entirely unsupported by the record. Indeed, plaintiff's counsel repeatedly made a similar assertion below until the trial court admonished plaintiff's counsel that no such gate existed in any of the photos. Plaintiff also repeatedly insists that Phillips was struck and killed by a handhold protruding from the side of the train when the only evidence before us is that Phillips was killed when she was struck head-on by the front of the train.

¶ 30 We take this opportunity to issue a reminder: "A reviewing court is entitled to have the issues clearly defined with pertinent authority and is not simply a depository into which the appealing party may dump the burden of argument and research." *People v. Oglesby*, 2016 IL App (1st) 141477, ¶ 205. Furthermore, compliance with our procedural rules is not optional. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12.

¶ 31 Nevertheless, other than the aforementioned disregard of portions of the appendix and plaintiff's brief, we decline to levy any other sanctions that would punish plaintiff for her counsel's lapses. Given that the appellee's brief sufficiently sets out the facts and the issues, which are not complicated, we consider the merits of plaintiff's arguments below. *See Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999) (declining to penalize plaintiff for counsel's failure to comply with Rule 341 because the issues were simple, and the appellee's brief provided a summary of the relevant testimony).

¶ 32                                B. Summary Judgment

¶ 33 The trial court granted summary judgment on behalf of defendant, reasoning that the open and obvious nature of the train precluded a finding that defendant owed a duty to Phillips. Plaintiff now asserts that this was error because Phillips was a passenger and defendant owed Phillips the highest standard of care.

¶ 34 Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Horwitz v. Holabird & Root*, 212 Ill. 2d 1, 8 (2004); 735 ILCS 5/2-1005(c) (West 2018). Summary judgment should not be granted unless the right of the moving party is clear and free from doubt. *Horwitz*, 212 Ill. 2d at 8.

While the nonmoving party in a summary judgment motion is not required to prove his or her case, the nonmovant must present a factual basis arguably entitling that party to a judgment. *Id.* A trial court's ruling on a summary judgment motion is reviewed *de novo*. *Id.* In reviewing a motion for summary judgment, courts construe the record strictly against the movant and liberally in favor of the nonmoving party. *Magnini v. Centegra Health System*, 2015 IL App (1st) 133451, ¶ 23.

¶ 35    To succeed in an action for negligence, plaintiff must establish that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach proximately caused injury to the plaintiff. *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 22. A legal duty refers to a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Id.* Absent a duty, no recovery by the plaintiff is possible as a matter of law. *Id.* The existence of a duty under a particular set of circumstances is a question of law for the court to decide. *Id.* Four overarching factors guide our duty analysis in any negligence case: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. *Quiroz v. Chicago Transit Authority*, 2022 IL 127603, ¶ 13.

¶ 36                    1. Phillips's Status as a Trespasser

¶ 37    Traditionally, a landowner owes a duty of reasonable care under the circumstances to all those entering the premises except to trespassers. *Quiroz*, 2022 IL 127603, ¶ 14. A trespasser is a person who enters upon the premises of another with neither permission nor invitation and intrudes for some purpose of his own, or at his convenience, or merely as an idler. *Id.* An entrant's status is determined at the time of injury. *Id.*

¶ 38    In *Anderson v. Chicago Transit Authority*, the decedent paid his fare and entered the Kedzie-Homan CTA Blue Line station. *Anderson v. Chicago Transit Authority*, 2019 IL App (1st) 181564, ¶ 4. Once on the boarding platform, the decedent waited for thirty minutes as multiple trains came and went. *Id*. On multiple occasions, he entered the two-foot, blue-colored warning tile located at the edges of the platform. *Id*. ¶ 5. The decedent ultimately dropped a bottle or can on the ground and later tripped on it, falling onto the station's tracks where he was electrocuted by the third rail. *Id*. ¶ 7. This court rejected the argument that the decedent became a passenger as soon as he paid his fare and thus, he was entitled to the highest standard of care owed by a common-carrier to its passengers. *Id*. ¶ 27. Instead, this court agreed with the defendant that a person must be in the act of boarding, be upon, or be in the act of alighting from the carrier's vehicle to be entitled to the standard of care owed to passengers. *Id*. ¶¶ 27, 30.

¶ 39    Though plaintiff insists that there is a dispute over the material fact of whether Phillips was trespassing at the time she was struck by a train, she has provided no evidence to substantiate such a dispute. The evidence before us is that Phillips, similar to the decedent in *Anderson*, was standing in a place that she was not authorized to be: beyond the yellow line and close to the tracks. As Greene testified, she was in "the foul of the tracks." The uncontroverted evidence presented for summary judgment below was that anyone crossing the yellow lines at the Station, other than at the time of boarding a train and irrespective of the possession of a ticket, is a trespasser. Phillips was well beyond the yellow line at the ground-level landing and was standing close enough to the tracks to be struck head-on by Train 119. The evidence bore out that if Metra police had been present at the station, they would have cited Phillips based on where she was standing. Section 18c-7503 of the Illinois Vehicle Code, titled, "Trespassing on railroad property; terminal security,"

states that no person shall "walk, ride, drive, or be upon the right of way or rail yard of a rail carrier within the State, at a place other than a public crossing." 625 ILCS 5/18c-7503(1)(a)(i) (West 2018). The same section defines "right of way," as "the track or roadbed owned, leased, or operated by a rail carrier which is located on either side of its tracks and which is readily recognizable to a reasonable person as being railroad property or is reasonably identified as such by fencing or appropriate signs." 625 ILCS 5/18c-7503(3) (West 2018). To be entitled to the standard of care owed to a passenger, which plaintiff claims would be appropriate, Phillips would have needed to be in the act of boarding, be upon, or be in the act of alighting from the carrier's vehicle to be entitled to the standard of care owed to passengers. *Anderson*, 2019 IL App (1st) 181564, ¶¶ 27, 30. Phillips was doing none of those things.

¶ 40 Thus, defendant owed no duty of care to Phillips as a trespasser other than to refrain from willfully and wantonly injuring her. *Quiroz*, 2022 IL 127603, ¶ 16 (*citing Choate*, 2012 IL 112948, ¶ 25). This limited duty is based on the concept that the law does not require an owner or occupier of land to anticipate the presence of persons wrongfully or unexpectedly on his land. *Id.* ¶ 16. A result of this principle is that a railroad operator is not required to keep a lookout for persons on the track. *Quiroz*, 2022 IL 127603, ¶ 14 (*citing Joy v. Chicago, Burlington & Quincy R. Co.*, 263 Ill. 465, 468 (1914) ("the law casts no duty upon a railroad company to keep a lookout for trespassers on its track" away from populated areas and public crossings)).

¶ 41 2. Open and Obvious Condition

¶ 42 In considering the foreseeability of the injury and likelihood of the injury, we also consider that "a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Quiroz*, 2022 IL 127603, ¶ 17 (*quoting*

*Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44 (2003)). Obvious means both the condition and the risk are apparent to and would be recognized by a reasonable person, in the position of the visitor, exercising ordinary perception, intelligence, and judgment. *Id*.

¶ 43    Not only are moving trains among the obvious dangers we recognize, but they are such an obvious danger that "even children should realize the risk of coming within the area made dangerous by it." *Id*. ¶ 18 (*quoting Choate*, 2012 IL 112948, ¶ 35). "It has never been part of our law that a landowner may be liable to a trespasser who proceeds to wantonly expose himself to unmistakable danger in total disregard of a fully understood risk." *Choate*, 2012 IL 112948, ¶ 39. When there is no dispute about the physical nature of the condition, such as its visibility, the question of whether a condition is open and obvious is a legal one for the court. *Park v. Northeast Illinois Regional Commuter R.R. Corp*., 2011 IL App (1st) 101283, ¶ 15. Given *Choate* and its progeny, we can only conclude that the train in this case was an open and obvious danger. Plaintiff agrees that the train was an open and obvious danger, but insists that defendant nevertheless owed Phillips a duty.

¶ 44    It is true that determining that the open and obvious doctrine applies does not end the analysis regarding duty. *Park*, 2011 IL App (1st) 101283, ¶ 13. Instead, the existence of a duty in the face of a known or obvious condition requires consideration of the same four factors that determine whether a duty exists in every negligence case: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. *Id*. Open and obvious dangers particularly implicate the first two factors. *Id*.

¶ 45    *Park* and *McDonald* are both instructive to our analysis of duty here. In *Park*, the decedent was struck and killed by an Amtrak train while he was crossing the railroad tracks at the Edgebrook station in Chicago. *Park*, 2011 IL App (1st) 101283, ¶ 2. The decedent attempted to cross the tracks at a designated pedestrian crossing, and there were no audible or visual warning devices to alert passengers of approaching trains. *Id*. ¶ 5. However, this court held that no duty was owed to the decedent due to the open and obvious nature of the train. *Id*. ¶ 18.

¶ 46    In *McDonald*, the decedent was struck by an express Metra train as he crossed the tracks at a Glenview station at a pedestrian crossing. *McDonald v. Northeast Illinois Regional Commuter R.R. Corp.*, 2013 IL App (1st) 102766-B, ¶ 3. Pedestrian signals were installed at the crossing, but were not yet activated. *Id*. This court held that Metra owed no duty because the moving train was an open and obvious danger. *Id*. ¶ 28. Notably, neither of the decedents in *Park* and *McDonald* were trespassers, and they were struck while in pedestrian crossings. *Park*, 2011 IL App (1st) 101283, ¶ 5; *McDonald*, 2013 IL App (1st) 102766-B, ¶ 3.

¶ 47    Similar to *Park* and *McDonald*, we find that defendant did not have a duty to Phillips, irrespective of whether Phillips was trespassing, because of the open and obvious nature of the moving train. At a minimum, the first two factors weigh heavily in defendant's favor. "When a condition is deemed open and obvious, the likelihood of injury is generally considered slight as it is assumed that people encountering potentially dangerous conditions that are open and obvious will appreciate and avoid the risks." *Park*, 2011 IL App (1st) 101283, ¶ 12. Property owners are also entitled to the expectation that those who enter upon their property will exercise reasonable care for their own safety. *Id*. ¶ 14. As for the third factor, we should consider the impact on the company's business operation as a whole when analyzing the existence of a duty. *Quiroz*, 2022 IL

127603, ¶ 37. The burden on defendant would be immense if we were to find that defendant has a duty to identify people on its right-of-way and protect them from the open and obvious danger of moving trains. *Id*. ¶ 38. Railroads operate day and night, every day, over thousands of miles of track. *Id*. Such a burden would no doubt require fencing off countless portions of track, as well as real-time monitoring through cameras or employees. While the record does not bear out what consequences defendant would suffer if it was forced to assume such a duty, the first three factors weigh heavily in defendant's favor and against the imposition of a duty despite the open and obvious nature of the train.

¶ 48 The record contains a photograph of Phillips, taken from the approaching train that struck her when it was perhaps 50 to 100 feet away. Phillips was standing on the ground, only several feet from the actual train tracks. In fact, if Phillips had been standing on the boarding platform, it would have been impossible for her to get as close to the tracks as she was without walking off the edge of the platform. It appears from the photograph and video that she was adjacent to the boarding platform and, had she moved several feet to her left, her back would have been up against the elevated boarding platform. Given the amount of space between the train as it passes through the station and the boarding platform, Phillips was directly in the path of the train. The extreme and undeniable danger of Phillips's decision to stand where she did is immediately apparent—made all the more inexplicable given her sister's testimony about Phillips's familiarity with Metra trains, the Station, and the importance of waiting behind the designated yellow lines. At a bare minimum, based on the video taken from Train 119, the train was visible for at least 34 seconds prior to the accident, and probably for some time before that. It is uncontroverted that the train's headlights, oscillating lights, and bells were all functioning, and that Thompson repeatedly

sounded the horn. The record before us offers no explanations or even theories as to why Phillips, standing so close to southbound tracks, never once looked north, and seemingly ignored multiple audible cues that should have alerted her to the approaching train. All of this is to say, the foreseeability and likelihood of such an injury—that a person will willingly stand in front of an obvious train even with ample time to move—is exceedingly low. Thus, defendant did not owe Phillips a duty despite the open and obvious nature of the train.

¶ 49                                      3. Possible Exceptions

¶ 50      Both *Park* and *McDonald* also maintained that an open and obvious danger is not a *per se* bar to finding a duty provided that the "distraction exception" or "deliberate encounter exception" applied. *Park*, 2011 IL App (1st) 101283, ¶ 22; *McDonald*, 2013 IL App (1st) 102766-B, ¶ 26. The former asks whether a property owner may have a reason to expect that the plaintiff's attention might be distracted such that he would not discover the obvious condition. *Park*, 2011 IL App (1st) 101283, ¶ 24. The latter imposes a duty when a defendant has reason to expect that a plaintiff will proceed to encounter the known or obvious condition, despite the danger, because to a reasonable person the advantages of doing so would outweigh the risk. *Id.* ¶ 26. However, plaintiff has not argued that either of these exceptions apply, and the evidence before us does not support them.

¶ 51      Instead, plaintiff asserts that we may still find the existence of a duty based on Section 337 of the Restatement (Second) of Torts, which states:

> "A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if:

(a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and

(b) the condition is of such nature that he has reason to believe that the trespasser will not discover it or realize the risk involved." Restatement (Second) of Torts, § 337 (1965).

¶ 52    The supreme court expressly adopted Section 337 in 1992. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 447-48 (1992). But application of Section 337 here, particularly subsection (b), stands in direct opposition to the open and obvious doctrine. Following the supreme court's holding in *Choate* that a moving train is an open and obvious danger as a matter of law, Section 337 cannot apply in this instance because defendant could not have had reason to believe that Phillips would not discover the obvious moving train or realize the risk involved. *Choate*, 2012 IL 112948, ¶ 35; *see also Quiroz*, 2022 IL 127603, ¶ 23 (finding that Section 337 did not apply because the condition at issue, a moving train, was an open and obvious condition). Thus, there are no applicable exceptions that would impose a duty on defendant despite the open and obvious nature of the train.

¶ 53                    4. Material Facts in Dispute

¶ 54    Finally, plaintiff also contends that summary judgment as a matter of law was improper because there are material facts in dispute, and those disputed facts could give rise to a duty, and because her claim that the train was traveling at an excessive speed is not pre-empted by federal law. We disagree.

¶ 55    In determining whether a genuine issue of material fact exists, the court strictly construes the pleadings, depositions, and affidavits against the moving party and liberally construes them in

favor of the nonmoving party. *Inman v. Howe Freightways, Inc.*, 2022 IL App (1st) 210274, ¶ 65. A genuine issue of material fact exists where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts. *Id*. For the purpose of summary judgment, material facts are facts that might affect the outcome of the case under the applicable substantive law. *Thai v. Triumvera 600 Naples Court Condominium Association*, 2020 IL App (1st) 192408, ¶ 38.

¶ 56    Without any citations to the record, plaintiff claims the following facts are in dispute: (1) Phillips's status as a passenger; (2) the duty owed to Phillips as a passenger; (3) whether Thompson was negligent for failing to apply the brakes prior to striking Phillips; (4) whether defendant was negligent for failing to maintain a locked chain on the fence on the ground-level landing; (5) whether there was an audible announcement made about the express train prior to it striking Phillips; (6) whether defendant was negligent for failing to guard the fence while the chain was unlocked; and (7) whether the train approached the station at a speed in excess of federal regulations.

¶ 57    A number of the "facts" that plaintiff insists are disputed are not facts at all, but instead legal conclusions that need no resolution on account of the fact that defendant owed no duty to Phillips because of the open and obvious nature of the train. As for Phillips's status as a passenger, we have already discussed above that the only evidence presented showed that Phillips was trespassing at the time she was struck by the train. Plaintiff's insistence to the contrary does not change the uncontroverted evidence before us. Next, there is no dispute about whether audible warning announcements were played at the Station. Defendant's computer system showed the audio warnings that should have been played, but there was no evidence that those warnings were

audible at the Station. However, even if this fact was disputed, it is not material to the outcome of this case given the open and obvious nature of the moving train. If the train was an open and obvious danger, which plaintiff has conceded, then defendant, in line with *Quiroz*'s rejection of Section 337 of the Restatement (Second) of Torts, had no duty to warn Phillips of the danger. *Quiroz*, 2022 IL 127603, ¶ 23. Finally, plaintiff asserts that there is a factual dispute about whether the train was traveling at a speed greater than that allowed by federal regulations, but the record does not reflect such a dispute. Thompson's testimony was that track speed for that area was 65 miles per hour, and the train's event recorder confirmed that Train 119 was traveling 60.9 miles per hour at the time of the accident. The only information that supports the conclusion that the train was traveling over the speed limit is that which was improperly appended to the appellant's brief and which we have elected to disregard.

¶ 58    That leads us tangentially to plaintiff's argument that an excessive speed claim was not preempted by federal law. When trains are traveling at speeds within the limits set by federal regulations, negligence claims based on excessive speed are pre-empted. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 674-76 (1993); *Zook v. Norfolk & Western Ry Co.*, 268 Ill. App. 3d 157, 162 (1994). Plaintiff's only support for a claim that Train 119 exceeded 65 miles per hour is the material appended to the appellant's brief that originated from outside the record that we have elected to disregard. Thus, we cannot accept plaintiff's position that an excessive speed claim was not pre-empted by federal law. Nor has plaintiff argued, or provided any authority in support thereof, that such an excessive speed claim would override the fact that Train 119 was an open and obvious danger.

¶ 59                                                   III. CONCLUSION

¶ 60     At the time she was struck by Train 119, Phillips was standing on the ground-level landing beyond the yellow line, a place she was not authorized to stand, and thus she was classified as a trespasser. Defendant's duty was therefore to refrain from willfully and wantonly injuring her— something plaintiff did not allege. Moreover, regardless of whether Phillips was a trespasser, plaintiff concedes that Train 119 was an open and obvious danger, and none of the circumstances of this case warrant the imposition of a duty despite the open and obvious nature of the train. The trial court properly found that defendant did not owe Phillips a duty. Without the presence of a duty to enable recovery, there was no error in granting summary judgment in defendant's favor.

¶ 61     Affirmed.